## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Mario Aliano, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:16-cv-02624-FB-MDG |
| Jeff Worth and Robert Burns, | ) ) ) | |
| Intervening Plaintiffs, | ) ) | |
| v. | ) ) | |
| CVS Pharmacy, Inc., a Rhode Island Corporation, | ) ) ) | |
| Defendant. | ) ) | |

## REPRESENTATIVE PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT WITH CVS PHARMACY, INC.

Thomas A. Zimmerman, Jr.
(admitted *pro hac vice*)
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020
(312) 440-4180 (fax)
tom@attorneyzim.com

*Proposed Settlement Class Counsel*

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................... 1

II.     PROCEDURAL BACKGROUND ......................................................................... 2

III.    THE PROPOSED SETTLEMENT ....................................................................... 5

        A.      Terms Of The Settlement ........................................................................... 5

                1.      Proposed Nationwide Settlement Class ......................................... 5

                2.      Monetary Relief ............................................................................. 6

                3.      Prospective Relief ......................................................................... 8

                4.      Release Of Claims......................................................................... 8

                5.      Notice, Claims Process And Settlement Administration ............... 9

                6.      Costs, Fees And Representative Awards ..................................... 10

IV.     ARGUMENT ........................................................................................................ 11

        A.      The Proposed Settlement Is Fair, Reasonable And Adequate .............. 11

                1.      Standard For Preliminary Approval Of Class Action Settlement ............ 11

                2.      The Settlement Is Procedurally Fair And Not A Product Of Collusion ... 13

                3.      The Criteria For Settlement Approval Are Satisfied ............................... 15

                        a.      Litigation Through Trial Would Be Complex, Expensive And
                                Lengthy ............................................................................ 15

                        b.      Class' Reaction Will Likely Be Positive ....................................... 17

                        c.      Discovery Has Advanced To A Stage Where Parties Can
                                Responsibly Resolve The Case ..................................... 17

                        d.      Plaintiffs Would Face Real Risks If Case Proceeded ................. 19

                        e.      Establishing A Class And Maintaining A Class Action Through
                                Trial Would Be Challenging .......................................... 20

                        f.      Defendant May Not Be Able To Withstand A Substantially Greater
                                Judgment ........................................................................ 21

g.      The Settlement Amount Is Reasonable In Light Of The Possible Recovery And Attendant Risks Of Litigation.............................. 21

B.      Provisional Certification Of The Settlement Class Is Appropriate...................... 23

1.      Rule 23(a) Is Met ..................................................................... 24

a.      Joinder Of All Members Is Impracticable ................................... 24

b.      There Are Questions Of Law Or Fact Common To The Class..... 24

c.      Plaintiffs' Claims Are Typical Of The Claims Of The Class ....... 25

d.      Plaintiffs Will Fairly And Adequately Protect Class Interests ..... 26

e.      Class Members Are Readily Identifiable And Ascertainable. ...... 27

2.      The Settlement Class Satisfies Rule 23(b)(3). .......................... 27

a.      Common Questions Predominate Over Individual Issues ........... 28

b.      A Class Action Is Superior To Alternative Methods of Adjudication.................................................................................. 28

C.      The Proposed Class Notice And Notice Plan Are Reasonable ........................... 29

D.      Plaintiffs' Counsel Should Be Appointed As Class Counsel............................... 31

V.      CONCLUSION............................................................................................ 32

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*In re "Agent Orange" Prod. Liab. Litig.*,
    818 F.2d 145 (2d Cir. 1987)......................................................................24

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    MDL No. 1775, No. 06-MD-1175 (JG)(VVP),
    2014 U.S. Dist. LEXIS 180914 (E.D.N.Y. Oct. 15, 2014).....................................19

*In re Am. Int'l Grp. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012)...................................................................21, 22

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...........................................................................22

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000).....................................................10, 11, 15

*Ayzelman v. Statewide Credit Servs. Corp.*,
    238 F.R.D. 358 (E.D.N.Y. 2006)................................................................18

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000).....................................................................20

*Bildstein v. MasterCard Int'l Inc.*,
    329 F. Supp. 2d 410 (S.D.N.Y. 2004)...........................................................20

*Cagan v. Anchor Sav. Bank FSB*,
    No. CV-88-3024, 1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 22, 1990) .........................16

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)....................................................................9, 16

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)......................................................................18

*Danieli v. IBM Corp.*,
    No. 08-3688 (SHS), 2009 U.S. Dist. LEXIS 106938 (S.D.N.Y. Nov. 16, 2009).....................9

*deMunecas v. Bold Food, LLC*,
    No. 09 Civ. 00440 (DAB), 2010 U.S. Dist. LEXIS 38229 (S.D.N.Y. Apr. 19, 2010)............25

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)....................................................................18

iii

*Denney v. Jenkens & Gilchrist, L.L.C.*,
    230 F.R.D. 317 (S.D.N.Y. 2005) ........................................................................................15

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007)................9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)...................................................................................................19

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
    No. 09-CV-486 (ETB), 2012 U.S. Dist. LEXIS 144446 (E.D.N.Y. Oct. 4, 2012)...................9

*Guzman v. VLM, Inc.*,
    No. 07-CV-1126 (JG) (RER), 2008 U.S. Dist. LEXIS 15821 (E.D.N.Y. Mar. 2, 2008) ........21

*Heerwagen v. Clear Channel Commc'ns*,
    435 F.3d 219 (2d Cir. 2006)................................................................................................22

*Jankowski v. Castaldi*,
    No. 01-cv-0164 (SJF) (KAM), 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. Jan. 13, 2006) ........22

*Labbate-D'Alauro v. GC Servs. Ltd. P'ship*,
    168 F.R.D. 451 (E.D.N.Y. 1996) .........................................................................................19

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)................................................................................................18

*Martens v. Smith Barney, Inc.*,
    181 F.R.D. 243 (S.D.N.Y. 1998) .........................................................................................13

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)..................................................................................................8

*In re Med. X-Ray Film Antitrust Litig.*,
    No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998)...........................16

*In re Michael Milken and Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ..........................................................................................16

*In re PaineWebber Ltd. P'ships. Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .........................................................................................13

*In re Platinum & Palladium Commodities Litig.*,
    No. 10cv3617, 2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. Jul. 15, 2014)................................11

*In re POM Wonderful LLC Mktg. and Sales Practices Litig.*,
    No. 10-02199, 2014 U.S. Dist. LEXIS 40415 (C.D. Cal. Mar. 25, 2014)..............................16

iv

*Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ...................................................................18, 23

*In re Sinus Buster Prods. Consumer Litig.*,
    No. 12-CV-2429 (ADS)(AKT),
    2014 U.S. Dist. LEXIS 158415 (E.D.N.Y. Nov. 10, 2014) .....................................10

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    No. 01-11814, 2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ................17

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ...............................................................................24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................8, 9

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
    No. 10-CV-864 (SLT) (RER), 2015 U.S. Dist. LEXIS 73276 (E.D.N.Y. Apr. 17, 2015) ........8

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) .......................................................................................8

## Other Authorities

Fed. R. Civ. P. 23 ......................................................................................... *passim*

Herbert B. Newberg & Alba Conte,
    *Newberg on Class Actions* § 11.41 (4th ed. 2002) ..............................................8, 9

**I.**      **INTRODUCTION**

This action challenges Defendant CVS Pharmacy, Inc.'s ("Defendant" or "CVS") sales and marketing practices with respect to its Algal-900 DHA product, a dietary supplement containing docosahexaenoic acid (DHA), an Omega-3 fatty acid, and which contained, on the label and/or on the packaging, the claim that it is "clinically shown to improve memory" or offers "clinically shown memory improvement" (the "Algal-900 DHA Product").     The Complaint in this case is similar to the complaint filed in a related action captioned *Jovel, et al. v. i-Health, Inc.*, No. 12-cv-05614 (the "Jovel Action"), which is pending in the United States District Court for the Eastern District of New York, and involves congruent parties and similar products, labeling claims, factual allegations, and legal claims.  The Jovel Action settlement was reached by the parties in that case after years of litigation, involving extensive discovery, motion practice, and multiple court-supervised settlement conferences. On March 4, 2016, the Honorable Marilyn D. Go preliminarily approved the settlement in the Jovel Action.  *See* Preliminary Approval Order in the Jovel Action, attached hereto as Exhibit 1.

Similar to the Jovel Action, the Complaint in this case alleges causes of action against CVS for violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act, violations of the consumer fraud and deceptive trade practices acts of the various states and the District of Columbia, and this case also asserts common law claims of fraud, fraudulent misrepresentation, and unjust enrichment, seeking injunctive relief and damages.  *See generally* Amended Class Action Complaint ("Am. Comp.") (ECF No. 7).

Specifically, Plaintiff alleges that CVS engages in unlawful, unfair, and deceptive business practices by misrepresenting to consumers that Algal-900 DHA has been clinically proven to improve memory function, in order to induce consumers to reasonably rely on those misrepresentations and purchase Defendant's product.  Am. Comp. at ¶ 5.  Plaintiff alleges that

the sole study on which Defendant bases its claim that Algal-900 DHA is "clinically shown" to improve memory has been discredited by the Federal Trade Commission ("FTC"), who concluded that the study does "not reveal any improvement in working memory[.]"  Am. Comp. at ¶ 3.  The FTC declared that "clinical-proof claims [based on the study] are false and misleading."  *Id.*  The BrainStrong product that is the subject of the Jovel Action also contains DHA and makes similar "memory-enhancing" representations in reliance on this study.

CVS and the Plaintiff, individually and on behalf of the other members of the Settlement Class[1], engaged in arm's length, good-faith negotiations in an effort to reach an amicable resolution to the instant Action.  Based on the years of litigation and settlement negotiations in the Jovel Action, and the similar representations and science underlying the memory-enhancing products in this Action and the Jovel Action, the proposed settlement is fair, reasonable and adequate.  As further explained below, and set forth more fully in the Amended Stipulation of Settlement ("Settlement Agreement", attached hereto as Exhibit 2), the proposed settlement provides a monetary refund or credit to Class Members who purchased Algal-900 DHA, and prospective relief for future consumers to remove the challenged representations off the product.

## II.  PROCEDURAL BACKGROUND

On February 11, 2016, Plaintiff Mario Aliano filed a Class Action Complaint and Motion for Class Certification in the Circuit Court of the State of Illinois for Cook County, entitled *Mario Aliano, individually, and on behalf of all others similarly situated v. CVS Pharmacy, Inc.*, Case No. 2016 CH 2021.  The Complaint includes claims on behalf of plaintiff individually, as well as putative classes of both Illinois and "nationwide" consumers who purchased CVS's Algal-900 DHA Product.  On February 17, 2016, CVS received service of Plaintiff's Summons, Complaint, and Motion for Class Certification in the Action.  On March 16, 2016, CVS removed

---

[1]  The definitions in the Settlement Agreement are incorporated herein by reference.

this Action to the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 16-cv-03372.  On April 15, 2016, Plaintiff filed an Amended Class Action Complaint and Amended Motion for Class Certification, alleging the same causes of action as in the original Complaint.

Shortly after the Action was removed to federal court, the Parties engaged in arm's length, good-faith negotiations in an effort to resolve the Action.  During negotiations, counsel for Defendant explained that it had reached a class-wide settlement agreement in the Jovel Action.  Plaintiff and Class Counsel reviewed the terms of the Jovel Action settlement, the settlement agreement and preliminary approval papers from the Jovel Action settlement, and the sales and financial data relative to the BrainStrong products at issue in the Jovel Action, and Plaintiff and Class Counsel analyzed that information *vis-a vis* the facts, circumstances, and scientific and financial data involving CVS and the Algal-900 DHA Product.

Class Counsel conducted a thorough examination and investigation of the facts and law relating to the matters in this Action, including, but not limited to, engaging in informal discovery, review and analysis of CVS's documents and data, review of the underlying facts, review of the Algal-900 DHA Product sales and financial data, analysis of the medical and scientific studies relative to the claims at issue, and an assessment of DHA.  Class Counsel also evaluated the merits of all Parties' contentions and evaluated this Settlement Agreement, as it affects all Parties, including the Settlement Class Members.

Based upon the informal discovery and investigation to date, an evaluation of the facts and law relating to the matters alleged in the pleadings, and their knowledge of the pending settlement in the related Jovel Action, Plaintiff and Class Counsel have agreed to settle the claims asserted in the Action pursuant to the provisions of the Settlement Agreement.  In so doing, Plaintiff and Class Counsel have considered the terms of the Settlement, the numerous

3

risks of continued litigation and other factors, including but not limited to the following:  (1) The expense and length of time necessary to prosecute the Action through trial; (2) The uncertainty of outcome at trial and the possibility of an appeal by either side following the trial; (3) The possibility that a contested class might not be certified, and if certified, the possibility that such certification would be reversed on appeal; (4) The fact that CVS would file a motion for summary judgment that, if granted, would dispose of all or many of the claims in this Action; and (5) The benefits being made available to Plaintiff and the Settlement Class Members under the terms of this Agreement.

Weighing the above factors, as well as all other risks and uncertainties of continued litigation and all factors bearing on the merits of settlement, Plaintiff and Class Counsel are satisfied that the terms and conditions of this settlement are fair, reasonable, adequate, and in the best interests of the Plaintiff and the Settlement Class Members.

On May 2, 2016, Plaintiff filed a motion for preliminary approval of the Stipulation of Settlement executed April 22, 2016, in the U.S. District Court for the Northern District of Illinois, Eastern Division.  On May 4, 2016, the named plaintiffs in the related and similar putative class action, *Worth, et al. v. CVS Pharmacy, Inc.*, Case No. 2:16-cv-00498-FB-MDG,[2] filed objections to the *Aliano* settlement and moved to intervene for the purpose of transferring the *Aliano* action to this Court.  On May 11, 2016, the U.S. District Court for the Northern District of Illinois granted the *Worth* plaintiffs' motion to intervene and transfer.  On May 24, 2016, *Aliano* was officially transferred to this Court.

Plaintiff now moves for preliminary approval of the parties' Amended Stipulation of Settlement, in which the *Aliano* parties clarified certain aspects of the previously agreed-to

---

[2]  The *Worth* lawsuit was filed on February 1, 2016—ten (10) days before the *Aliano* lawsuit was filed.

compensation and injunctive relief contained in the Stipulation of Settlement executed April 22, 2016.

Class Counsel also repeatedly reached out to plaintiffs' counsel in *Worth*; however, plaintiffs' counsel in *Worth* had no interest in coordinating the two cases or participating in joint settlement discussions with Class Counsel.  *See* Declaration of Thomas A. Zimmerman, Jr. ("Zimmerman Decl."), ¶¶ 1-13, attached hereto as <u>Exhibit 3</u>.

## III.   <u>THE PROPOSED SETTLEMENT</u>

The parties in the Jovel Action reached agreement on their settlement after three years of litigation, vigorous debate of legal and factual theories by counsel, guidance by two magistrate judges, and extensive arm's-length negotiations over a 19-month period. The Settlement in the this Action provides similar, and in many instances more favorable, benefits to the settlement class and general public as the benefits provided by the settlement in the Jovel Action.  As an additional measure to protect consumers in the future, Defendant has agreed to refrain from selling Algal-900 DHA Products with any representations regarding the health benefits, performance, safety or efficacy of the Products unless those representations are supported by Competent and Reliable Scientific Evidence.

### A.     **Terms Of The Settlement**

#### 1.     **Proposed Nationwide Settlement Class**

Under the terms of the Settlement, the Settling Parties agreed to certification of the following nationwide Settlement Class (the "Settlement Class") for settlement purposes only:

> All consumers in the United States who purchased Algal-900 DHA during the Settlement Class Period [November 15, 2008 through the Preliminary Approval Date].[3]

---

[3]  References to particular paragraphs of the Settlement Agreement are prefixed by "SA ¶."

SA ¶¶ 2.38-2.39.  Excluded from this definition are the Released Persons (as defined in the Settlement Agreement), government entities, and persons who made such purchase for the purpose of resale.  *Id.*  Settlement Class Members who exclude themselves from the Settlement, pursuant to the procedures set forth in paragraphs 9.6 – 9.7 in the Settlement Agreement, shall no longer thereafter be Settlement Class Members and shall not be bound by the Settlement Agreement and shall not be eligible to make a claim for any benefit under the terms of the Settlement Agreement.  *Id.*

### 2.     Monetary Relief

If the Settlement is approved, Defendant shall offer to any Class Member who submits a valid Claim Form to the Class Action Administrator, on or before the Claim Period Close Date (a) a full refund of the price paid by the Claimant for Algal-900 DHA, if the Claim Form is accompanied by a valid Proof of Purchase indicating the actual price paid; (b) a refund based on the average retail price for the Algal-900 DHA Product, if the Claim Form is accompanied by a valid Proof of Purchase that does not indicate the actual purchase price paid; or (c) if the Product was purchased (i) using an ExtraCare Card or (ii) online through cvs.com, a refund of the amount indicated in CVS's records payable to the Class Member in either the form of a credit to the purchaser's ExtraCare account associated with all Products purchased, or a voucher toward the purchase of any product sold at CVS in the event there is no ExtraCare account associated with their purchase.  SA ¶ 3.1.

Defendant shall offer to any Class Member who submits a valid Claim Form to the Class Action Administrator, on or before the Claim Period Close Date, if the Claim Form is not accompanied by a valid Proof of Purchase and CVS's records do not indicate that the Claimant has purchased the Product, at the Claimant's option, either (i) $4.00 in cash value or (ii) $6.50 in voucher value toward the purchase of any product sold at CVS. Each Claimant who submits a

valid Claim Form without valid Proof of Purchase shall receive a maximum value of $4.00 in cash value or $6.50 in voucher value. SA ¶ 3.1.

There is no limit on the number of claims a Settlement Class Member can make as long as the claim is accompanied by a Proof of Purchase; claimants without Proof of Purchase may submit a maximum of one (1) claim, with a maximum of two (2) claims per household. *See id.*

This is similar to, and in many respects better than, the relief provided in the Jovel Action settlement. Specifically, in *Jovel*, the defendant i-Health shall offer to any Class Member who submits a valid Claim Form to the Class Action Administrator, on or before the Claim Period Close Date (a) a full refund of the price paid by the Claimant for a BrainStrong product, if the Claim Form is accompanied by a valid Proof of Purchase indicating the actual price paid; (b) a refund based on the average retail price for the BrainStrong Product, if the Claim Form is accompanied by a valid Proof of Purchase that does not indicate the actual purchase price paid; or (c) if the Claim Form is not accompanied by a valid Proof of Purchase, at the Claimant's option, either (i) $4.00 in cash value or (ii) $6.50 in voucher value toward the purchase of any i-Health product, with a maximum of one per claimant, two per household. *See* Settlement Agreement in the Jovel Action ("Jovel SA"), ¶ 3.1, attached hereto as <u>Exhibit 4</u>.

On a relative basis, the monetary relief provided in this Settlement is actually more advantageous for Class Members without any Proof of Purchase. For example, the average retail price of the Algal-900 DHA 90 count bottle is $19.58, and the average retail price of the BrainStrong Adult product is $25.37. *Compare* <u>Exhibit F</u> to the settlement agreements in this Action and the Jovel Action. These claimants can receive up to 33% of the Algal-900 DHA purchase price, compared to receiving up to 25% of the BrainStrong Adult purchase price.

Additionally, in this Settlement, if the Product was purchased (i) using an ExtraCare Card or (ii) online through cvs.com, Class Members will receive, *even without submitting Proof of*

*Purchase*, a refund of the amount indicated in CVS's records for all Products purchased, payable in either the form of a credit to the purchaser's ExtraCare account associated with the purchase, or a voucher toward the purchase of any product sold at CVS in the event there is no ExtraCare account associated with their purchase.  No proof of purchase is required for this refund, as long as the Claimant submits a valid Claim Form. SA ¶ 3.1.

### 3.     Prospective Relief

CVS created new labels for the Algal-900 DHA Product and ceased receiving product with the old labels claiming that the Product was "clinically shown to improve memory" or offered "clinically shown memory improvement" (the "Challenged Claims").  CVS agrees not to make the Challenged Claims or any other representations regarding the health benefits, performance, safety, or efficacy of the Algal-900 DHA Product or any other dietary supplement, food or drug containing DHA—excluding (1) infant formula or ingredients when sold specifically for use in infant formula, and (2) prenatal dietary supplements or prenatal vitamins— on any product label, packaging, advertising or marketing material of any kind, unless such representations are supported by Competent and Reliable Scientific Evidence [as defined in the Settlement Agreement] that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence.  SA ¶ 3.3.

### 4.     Release Of Claims

In exchange for the foregoing relief, the Settlement Class Members who do not opt out of the Settlement will release Defendant from all claims asserted in this action and any related claims which could be asserted against Defendant in connection with the sale and marketing of Algal-900 DHA Products during the relevant Class Period.

### 5.    Notice, Claims Process And Settlement Administration

The proposed plan will include sending direct notice through a combination of electronic mail and postal mail to Class Members.  The Claims Administrator estimates that they will provide actual, valid e-mail notice to approximately 108,217 Class Members, representing approximately 55.4% of the Class,[4] plus they will provide actual, valid postal notice to approximately 43,810 Class Members, representing 22.4% of the Class.  Combined, the email and postal individual notice effort is estimated to reach 152,027 Class Members, representing 77.8% of the Class.  *See* Declaration of Gina M. Intrepido-Bowden on Settlement Notice Plan, ("KCC Decl.") ¶¶ 23-28, which is being filed concurrently with this Motion.  This notice provides information to the Settlement Class Members concerning, among other things: (1) terms of the Settlement; (2) instructions on submitting a claim; (3) objection and opt-out rights; and (4) date, time and location of the final approval hearing.

The Claims Administrator will also cause the Settlement Notice, in the form approved by this Court, to be published once in *People* magazine and twice in *USA Today*, as well as 30 days of Internet banner notifications with 10 million impressions that will contain links to the Settlement Website.  KCC Decl. ¶¶ 29-33.

The combined individual notice effort and supplemental media campaign is estimated to reach approximately 82.7% of likely Class Members on average 1.2 times each.  KCC Decl. ¶

---

[4] This estimate assumed that 20% of the e-mails sent would "bounce-back" as undeliverable.  The 20% bounce-back rate is an estimate based on the Claims Administrator's experience.  In reality, CVS expects a much lower bounce-back rate for the e-mails that will be sent based on the data it maintains, and therefore expects that the Claims Administrator will be able to provide actual, valid e-mail notice to even more members of the class.  For example, from the time period from June 1, 2015 through May 31, 2016, for ExtraCare members, CVS had a bounce-back rate of the e-mails it sent of less than 0.80%.  For CVS.com subscribers—individuals who have registered on CVS.com and chose to receive promotional emails from CVS.com—the bounce-back rate was less than .50%.  In addition, CVS maintains the accuracy of its e-mail data by automatically suppressing any e-mails that "hard bounce" once (that is, e-mails that are returned as undeliverable due to an erroneous or nonexistent e-mail address) or "soft bounce" more than twice (that is, e-mails that are rejected by an existing, accurate e-mail account for some reason, such as the mailbox's being full).  The data the Claims Administrator analyzed in estimating the reach of valid e-mail notice reflected CVS's up-to-date information and e-mail suppression.  *See Worth*, 2:16-cv-00498-FB-MDG, ECF No. 37 at 2 & n.4.

36.

If the Settlement and notice plan is preliminarily approved, the Claims Administrator will establish and maintain a Settlement Website[5] within 45 days of the preliminary approval to provide documents and information concerning the Settlement and the litigation, electronic or printable version of the Claim Form, instructions for filing a claim, opting out of the Settlement, or objecting to the Settlement, deadlines related to the Settlement, and other information as agreed to by the Parties.  KCC Decl. ¶ 34.

### 6.    Costs, Fees And Representative Awards

Defendant has agreed to bear the costs of providing notice and administration of the Settlement, including processing claim forms and requests for exclusion ("Notice and Other Administrative Costs").  SA ¶ 7.1.  As a matter negotiated after the relief to the Settlement Class was agreed to, Class Counsel will petition the Court for fees and costs that do not exceed $100,000, the payment of which is separate from and in addition to the relief afforded to the Settlement Class Members.  SA ¶¶ 4.1, 4.2.  The allowance or disallowance by the Court of the petition by Class Counsel for fees and costs will not be a basis for rescinding the Settlement Agreement.  SA ¶ 4.4.  Similarly, Class Counsel will petition the Court for incentive fee payments to the Representative Plaintiff in the amount of one thousand dollars ($1,000), for service provided to the Settlement Class.  SA ¶ 5.1.  The Settlement Agreement and Plaintiff's support of the Settlement are not conditioned upon the Court's approval of the amounts listed in this paragraph.

---

[5] This settlement website will be combined with the Jovel Action settlement website.  They will use the same URL, "wwwbrainhealthdhasettlement.com," and there will be separate sections on the website for the information and documents relative to each case.

IV.    **ARGUMENT**

   A.    **The Proposed Settlement Is Fair, Reasonable And Adequate**

   This Court should approve the Settlement Agreement. The Settlement is the result of arm's-length negotiations among the parties and their counsel, and informed by the exchange of significant information through the settlement process. The Settlement provides favorable monetary benefits to Class Members considering all of the risks associated with litigation, and with reasonable financial exposure to Defendant.  Prior to reaching resolution, Class Counsel thoroughly investigated the case, and in doing so, gathered ample information to assess the strengths and weaknesses of the parties' positions.  Having weighed the likelihood of success and inherent risks and expense of litigation, Plaintiff and counsel strongly believe that the proposed settlement is "fair, reasonable, and adequate" as required by Fed. R. Civ. P. 23(e)(2).

      1.    **Standard For Preliminary Approval Of Class Action Settlement**

   Courts encourage, and public policy favors, compromise and settlement of class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (emphasizing the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks omitted); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg") § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  It is within the court's discretion to approve a proposed class action settlement upon determination that the proposed settlement is fair, reasonable and adequate. *McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009).  "The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate.  There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation[.]"  *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

11

Preliminary approval is the first step in a settlement process. It may be granted if the court finds there is "'probable cause to submit the [proposed settlement] to class members and hold a full-scale hearing as to its fairness.'"  *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-864 (SLT) (RER), 2015 U.S. Dist. LEXIS 73276, at *17 (E.D.N.Y. Apr. 17, 2015) (quoting *In re Traffic Exec. Ass'n E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980)).[6]  At this stage, the court need only conduct an "'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Id.*; *see also* Newberg § 11.25.

Fairness is assessed by an examination of the terms of the proposed settlement and the negotiating process leading to the settlement.  *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09-CV-486 (ETB), 2012 U.S. Dist. LEXIS 144446, at *6 (E.D.N.Y. Oct. 4, 2012). "A 'presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litigation (Third) § 30.42 (1995)).  Where a settlement is achieved through arm's-length negotiations by experienced counsel and there is no evidence of fraud or collusion, "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).

When evaluating the terms of a proposed class settlement, courts in this Circuit are guided by the factors enumerated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.

---

[6] *See also Danieli v. IBM Corp.*, No. 08-3688 (SHS), 2009 U.S. Dist. LEXIS 106938, at *12-13 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where settlement "has no obvious defects" and proposed allocation plan is "rationally related to the relative strengths and weaknesses of the respective claims asserted.").

1974), *abrogated on other grounds*.  These factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Id.* at 463 (citations omitted).

### 2.    The Settlement Is Procedurally Fair And Not A Product Of Collusion

The settlement was the product of arm's-length negotiations conducted by experienced counsel, knowledgeable in complex, consumer class actions. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000) (a settlement will enjoy a presumption of fairness if the court finds that it is the product of "arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation"), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  Plaintiff's counsel conducted a thorough examination and investigation of the factual and legal aspects of this Action.  Prior to and during the course of negotiation, Plaintiff requested and obtained documents and financial information from Defendant.  In addition, Plaintiff requested and was provided with a significant set of Class data.  Plaintiff's counsel personally reviewed and analyzed thousands of pages of documents, in addition to the Class data produced by Defendant, analyzed medical and scientific studies, and assessed the efficacy of DHA on memory improvement. Zimmerman Decl. ¶ 21.

The parties engaged in good-faith negotiations, and the Settlement terms largely tracked the terms that were preliminarily approved by the Court in the Jovel Action—although the Settlement benefits and Notice plan are superior in this Settlement.

Moreover, Plaintiff's counsel involved in the negotiations have considerable experience in handling consumer class actions and are clearly capable of assessing the strengths and

13

weaknesses of their respective positions. *See infra* at § IV.D, and Zimmerman Decl. Zimmerman Law Offices has successfully litigated dozens of class action lawsuits and recovered substantial monetary benefits for Class members. *See* Zimmerman Decl. ¶¶ 16-19, and Exhibit H thereto. The experience of the firm and attorneys involved demonstrate that the Settlement Class Members were well-represented at the bargaining table.

As mentioned above, Class Counsel repeatedly reached out to plaintiffs' counsel in the *Worth* case in an effort to coordinate the cases and try to negotiate a global resolution of both cases with Defendant. However, plaintiffs' counsel in *Worth* had no interest in coordinating the two cases or participating in joint settlement discussions with Class Counsel. *See* Zimmerman Decl. ¶¶ 2-13, and Exhibits A-D thereto.

Specifically, on March 17, 2016, Defendant removed this Action to federal court and defense counsel informed Zimmerman about the *Worth* case and the Jovel Action. Zimmerman sent an email to plaintiffs' counsel in the *Worth* case on that day. On separate occasions, Zimmerman spoke to two attorneys representing the plaintiffs in the Jovel Action, and they discussed the investigation, facts, discovery, procedure, and settlement of the Jovel Action. On March 22, 2016, Zimmerman emailed and called plaintiffs' counsel in the *Worth* case in an effort to coordinate the matters, as Defendant's counsel informed Zimmerman that Defendant wanted to settle the this Action and the *Worth* case on the same terms as the Jovel Action. On March 28, 2016, Zimmerman again emailed plaintiffs' counsel in the *Worth* case in an effort to coordinate the matters and discuss settlement issues. On March 29, 2016, Zimmerman again emailed plaintiffs' counsel in the *Worth* case to discuss settlement issues. On April 1, 2016, Zimmerman called plaintiffs' counsel in the *Worth* case and again expressed his interest in working with them to enter into a global settlement involving both this Action and the *Worth* case. On April 13, 2016, Zimmerman sent an email to plaintiffs' counsel in the *Worth* case and mentioned that

14

Defendant's counsel informed Zimmerman of a mediation that was scheduled with Defendant and plaintiffs' counsel in the *Worth* case on April 21, 2016.  Zimmerman wrote that it would make sense for him to participate in that mediation in order to reach a global resolution of this Action and the *Worth* case.  Zimmerman never received any response from plaintiffs' counsel in the *Worth* case, and they participated in the mediation without Zimmerman.  That mediation failed, and did not result in a settlement.  This Settlement was reached the next day, on April 22, 2016.  *See* Zimmerman Decl. ¶¶ 2-13, and Exhibits A-D thereto.

The foregoing demonstrates that Defendant wanted to settle this Action and the *Worth* case on the same terms as the companion Jovel Action—settlement terms that had already received preliminary approval by the Court.  Zimmerman repeatedly reached out to plaintiffs' counsel in the *Worth* case in an effort to coordinate cases and reach a global resolution, but plaintiffs' counsel in the *Worth* case ignored Zimmerman and excluded Zimmerman from their mediation with Defendant. Their mediation failed, and Zimmerman negotiated a settlement with Defendant that has more favorable Settlement benefits and a more robust Notice plan than what was preliminarily approved in the Jovel Action settlement.  Clearly, there was no collusion here.

### 3.    The Criteria For Settlement Approval Are Satisfied

While it is "not necessary to exhaustively consider the [*Grinnell*] factors applicable to final approval," *In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 U.S. Dist. LEXIS 96457, at *38 (S.D.N.Y. July 15, 2014), all of the factors heavily favor granting preliminary approval.

### a.    Litigation Through Trial Would Be Complex, Expensive And Lengthy

The Settlement Agreement provides favorable monetary and injunctive benefits to the Settlement Class and future consumers while avoiding the significant expenses and delays associated with litigation.  Indeed, "[m]ost class actions are inherently complex and settlement

avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 174.

While there has been informal discovery in this Action and the related Jovel Action, additional discovery would be required before the case would be ready for trial; this includes a deposition of the named Plaintiff, Defendant, Defendant's personnel, personnel from retailers, and expert witnesses for both sides.  Furthermore, Defendant would vigorously oppose class certification and seek summary judgment on the merits if a class were certified.  Assuming the case proceeded to trial, preparing and putting on evidence with respect to various state consumer protection statutes would also be time consuming and costly.  Absent an approved settlement, the parties will be forced to continue a fact-intensive litigation, which will burden the court and result in significant expenses to all parties involved.  Any judgment will likely be appealed, thus elevating the costs and extending the duration of the litigation.

By contrast, the Settlement Agreement provides an expeditious resolution of this action by offering prompt, reasonable payments to the Settlement Class and important prospective relief to protect the Class and future consumers of Defendant's products.

The Settlement delivers a real and substantial remedy to the Settlement Class without the risk or delay inherent in prosecuting Plaintiff's claims against Defendant through summary judgment, trial, and appeal. Thus, this factor favors preliminary approval of the Settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation."); *In re Sunrise Sec. Litig.*, 131 F.R.D. 450, 455 (E.D. Pa. 1990) (approving a class action settlement because, in part, the settlement "will alleviate . . . the extraordinary complexity, expense and likely duration of this litigation").

16

### b.    Class' Reaction Will Likely Be Positive

At this stage, it is not possible to conclusively measure the reaction of the Settlement Class because Notice of Settlement has yet to be issued to the Class.  However, the Settlement Agreement proposes to offer essential prospective relief and favorable monetary benefits that include: (1) full monetary refund of the actual purchase price; (2) monetary refund of the average retail price; (3) credits to the Class Member's ExtraCare account for the full amount of the actual purchase price for all Products purchased; or (4) maximum of $4.00 in cash or $6.50 in voucher value.  Moreover, the fact that Plaintiff and his experienced counsel support the Settlement Agreement is a strong indication that the Settlement Class will likely view the terms of the Settlement Agreement positively.

Of course, plaintiffs' counsel in the *Worth* case will oppose the Settlement and attempt to convince their friends to oppose the Settlement in an effort to make it appear that there is more opposition to it.  But they cannot escape the fact that the terms of this Settlement provide significant compensation, injunctive relief, extraordinarily high direct notice to Class Members, and an all-inclusive Class Period that reaches back in time eight years—to 2008—to include consumers in the Settlement who would otherwise be barred by applicable Statutes of Limitations.

### c.    Discovery Has Advanced To A Stage Where Parties Can Responsibly Resolve The Case

This Action is in its very early stages.  However, absent a settlement, the Parties faced long, hard-fought litigation with an uncertain outcome.  As stated above, the parties in the Jovel Action engaged in extensive discovery prior to entering into the settlement in that case. That discovery process involved, among other things, issuing written discovery on Defendant; responding to Defendant's written discovery, and reviewing documents produced by Defendant. Plaintiff's counsel in the Jovel Action personally reviewed and analyzed a rolling production of 270,000 pages of documents and class data produced by Defendant, consulted with experts and

industry personnel, and assessed the efficacy of DHA on brain health.  The parties in the Jovel Action engaged in protracted, hard-fought negotiations to reach a final agreement on the terms of the settlement.  This is just some of what the Parties faced in this Action.

Extensive pre-trial discovery is not a prerequisite to approval of a settlement.  Instead, discovery efforts by the parties must: (1) produce sufficient facts to enable the court to make an intelligible appraisal of the Settlement; and (2) uncover valuable facts key to the merits of the action.  *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998).

The pertinent question is whether Class Counsel has sufficient information to ensure "effective representation." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 966 (N.D. Ill. 2011). Courts have repeatedly explained that it does not matter whether the discovery is labelled "formal" or "informal;" instead "the pertinent inquiry is what facts and information have been provided." *See id.*; *see also McBean v. City of New York*, 233 F.R.D. 377, 384-85 (S.D.N.Y. 2006); *In re Elan Secs. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005).

Settlement Class Counsel in this Action reviewed medical and scientific studies, sales and financial information for the Product, had discussions with both of the class counsel in the Jovel Action, and was well-informed of the important facts and relevant legal issues when negotiating this Settlement. This factor favors preliminary approval of the Settlement.

Moreover, the issue of Defendant's liability does not turn on any documents or information uniquely in the possession and control of Defendant.  To the contrary, the essential inquiry here is whether Defendant's Product is clinically shown to improve memory.  Efficacy of DHA is publicly available and not uniquely in Defendant's possession.  Further, Plaintiff's counsel has a substantial understanding of the issues presented by this case.  Thus, Plaintiff's counsel is well positioned to evaluate the scientific evidence concerning the type of health claims

on the Algal-900 DHA Products' labels.

Efforts by both parties demonstrate that they have a thorough understanding of the strengths and weaknesses of their respective positions, and are sufficiently apprised of the pertinent facts of this action to make a conscientious analysis of the proposed settlement.

### d.    Plaintiff Would Face Real Risks If The Case Proceeded

Despite the relative strength of Plaintiff's case, Plaintiff faced substantial hurdles as to whether continued litigation will result in the full set of relief that Plaintiff sought.  Indeed, "[l]itigation inherently involves risks."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Defendant raised various legal defenses to which Plaintiff's claim could be subject, including, but not limited to: (1) failure to state a claim; (2) preemption by the Food, Drug and Cosmetic Act ("FDCA"); (3) primary jurisdiction of the Food & Drug Administration ("FDA"); and (4) statute of limitations.  Notwithstanding Plaintiff's confidence in the strength of his position, Plaintiff recognizes that factual difficulties or legal defenses could pose a substantial risk of non-recovery.

Plaintiff must establish that Defendant's representations that the Product is "clinically shown to improve memory" or offers "clinically shown memory improvement" are false, misleading and deceptive and/or that members of the public are likely to be deceived by Defendant's advertising and labeling.  This is an expensive and challenging task.  While Plaintiff is confident that an expert can prove that the Algal-900 DHA Products are not clinically shown to improve memory, there is always the risk that Plaintiff could lose.  The task is further complicated by the fact that some of the Algal-900 DHA Products contain ingredients other than DHA algal oil, and an expert must analyze these ingredients to determine whether they are capable of delivering the promised health benefits.  Due to the large placebo effect, Defendant will likely argue that there are numerous satisfied customers, and that the effectiveness of dietary

supplements varies based on a host of individual issues unique to the particular consumer, such as health condition and length and manner of use.  While Plaintiff believes that he would prevail over this argument, it certainly poses a risk.

Apart from the factual uncertainty regarding proof of falsity in Defendant's representation, there is also uncertainty in establishing damages.  Unlike the anticipated claims process in the proposed settlement, Plaintiff must meet certain burdens in order to prove damages at trial.  The Algal-900 DHA Product packaging also touts the "heart health" and "eye health" benefits of DHA, which are well recognized.  Plaintiff would have difficulty establishing class-wide damages, as some Class Members bought the product for its recognized health benefits to their eyes and/or heart.  The product is *not* worthless.

By contrast, the Settlement Agreement avoids the risks inherent in protracted litigation, and provides a prompt and favorable resolution to the Class.

> **e.**    **Establishing A Class And Maintaining A Class Action Through Trial Would Be Challenging**

Plaintiff is confident in his ability to maintain this action as a class through trial.  Nonetheless, he recognizes that he faces substantial hurdles in certifying a class.  Defendant will likely contend that individual reliance, materiality, causation and damages preclude class certification.  For example, as stated above, some Class members bought the Product for its recognized health benefits to their eyes and/or heart, and the challenged memory claims had nothing to do with their purchase of the Product—there was no materiality to or reliance on the challenged claims.  In addition, Defendant would have raised issues pertaining to the ascertainability of the Settlement Class in light of the fact that many consumers do not retain receipts for the products they have purchased.  Further, class determination will require extensive and expensive briefing by both parties, the outcome of which is by no means assured.  Should the class be certified, Defendant will likely challenge certification or seek permission to file an interlocutory appeal

under Fed. R. Civ. P. 23(f).  *See Park v. Thomson Corp.*, No. 05 Civ. 2931 (WHP), 2008 U.S. Dist. LEXIS 84551, at *9 (S.D.N.Y. Oct. 22, 2008); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) ("A district court retains the authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable.").  The proposed settlement eliminates these risks, expenses and delays.

### f. Defendant May Not Be Able To Withstand A Substantially Greater Judgment

The seventh *Grinnell* factor considers whether a defendant could withstand a judgment substantially higher than the proposed settlement amount if the case were to proceed to trial. *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 338 (S.D.N.Y. 2005).  While Defendant has the ability to meet its obligations under the Settlement Agreement, there is no certainty that Defendant could bear the enormously large compensatory damages award that could be assessed if the case was to proceed through trial and survive challenge on appeal.  As mentioned above, Defendant is agreeing to compensate consumers who would otherwise be barred from recovery due to the applicable Statutes of Limitations. Even if Defendant could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair."  *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9.

### g. The Settlement Amount Is Reasonable In Light Of The Possible Recovery And Attendant Risks Of Litigation

The adequacy of a settlement amount offered should be judged "in light of the strengths and weaknesses of the plaintiff[s'] case."  *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888, at *15 (E.D.N.Y. Aug. 7, 1998) (internal quotation marks omitted).  That the settlement amount is less than the maximum potential recovery is not a barrier to approval.  *See Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a

single percent of the potential recovery.").[7]   Indeed, judging whether a settlement is reasonable "is not susceptible of a mathematical equation yielding a particularized sum."  *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993).

Although Plaintiff believes his claims have merit, he recognizes that he faces significant legal, factual, and procedural obstacles to recovery.  Defendant continues to vigorously deny any wrongdoing and denies any liability to the Plaintiff or any members of the Class.  Although Plaintiff has confidence in the claims and ability to certify a class action, a favorable outcome is not assured.  *See, e.g.*, *In re POM Wonderful LLC Mktg. and Sales Practices Litig.*, No. 10-02199, 2014 U.S. Dist. LEXIS 40415 (C.D. Cal. Mar. 25, 2014) (decertifying nationwide class).  Even if judgment were entered against Defendant, any appeal in the Second Circuit would likely take years to resolve.  By settling, Plaintiff and the Settlement Class avoid these risks, as well as the delays and risks of a lengthy trial and appellate process.  The Settlement will provide Settlement Class members with monetary benefits that are immediate, certain and substantial, and avoid the obstacles that might have prevented them from obtaining relief.

Here, each Class member may receive either: (1) full monetary refund of the actual purchase price; (2) monetary refund of the average retail price; (3) credits to the Class Member's ExtraCare account for the full amount of the actual purchase price of all Products purchased; or (4) a maximum of $4.00 in cash or $6.50 in voucher value, depending upon whether documentation of the purchase price is provided.  SA ¶¶ 3.1, 8.3.  In addition, Defendant has agreed to pay the costs of notice and administration and has agreed to pay reasonable counsel fees and costs for Class Counsel, up to a maximum of $100,000.  SA ¶ 4.1.  The payment by Defendant of attorneys' fees and expenses is separate from and in addition to the relief afforded

---

[7] *See also Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 U.S. Dist. LEXIS 11450, at *34 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where maximum potential recovery was approximately $121 million).

the Class Members.  SA ¶ 4.2.  Given the potential of a non-recovery, the Settlement Agreement provides a favorable resolution of this action, including sizable refunds to consumers with and without documentation of their purchases, important prospective relief and effective notice to the Class that falls well within the range that courts have traditionally found to be fair and adequate under the law.

Moreover, the fact that the Settlement Agreement provides for a prompt payment to claimants favors approval of the settlement.  *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road . . . Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no recovery.") (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *modified on other grounds*, 818 F.2d 179 (2d Cir. 1987) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.")).  Therefore, these factors militate in favor of preliminarily approving the Settlement.

### B.       Provisional Certification Of The Settlement Class Is Appropriate

Under Federal Rule 23(c)(1), "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Ayzelman v. Statewide Credit Servs. Corp.*, 238 F.R.D. 358, 362 (E.D.N.Y. 2006) (internal quotation marks omitted).  "Certification of a class for settlement purposes only is permissible and appropriate[.]"  *Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006).  Where a class is proposed in connection with a motion for preliminary approval, "a court must ensure that the requirements of Rule 23(a) and (b) have been met."

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).   Courts employ a "'liberal rather than restrictive construction'" of Rule 23, "'adopt[ing] a standard of flexibility'" in deciding certification.  *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (quoting *Sharif ex rel. Salahuddin v. N.Y. State Educ. Dep't*, 127 F.R.D. 84, 87 (S.D.N.Y.1989)).

Because the proposed Settlement Class satisfies requirements under Rule 23(a) and at least one of the subsections of Rule 23(b), and Defendant consents to conditional certification of a class action for settlement purposes only, Plaintiff respectfully requests that this Court provisionally certify the nationwide Settlement Class defined above.

### 1.       Rule 23(a) Is Met

#### a.       Joinder Of All Members Is Impracticable

Numerosity is met if "the class is so numerous that joinder of all members is impracticable[.]"[8]  Fed. R. Civ. P. 23(a)(1).  Here, the Settlement Class includes potentially thousands of consumers nationwide who purchased the Algal-900 DHA Products.  Given the number and geographic dispersion of potential Class Members, joinder would be impracticable.  Accordingly, the requirement is met.

#### b.       There Are Questions Of Law Or Fact Common To The Class

To be certified as a class action, there must be "questions of law or fact common to the class[.]"  Fed. R. Civ. P. 23(a)(2).  The requirement of commonality does not require identical claims and arguments.  "To satisfy commonality, 'even a single common question will do.'"  *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775, No. 06-MD-1175 (JG)(VVP), 2014 U.S. Dist. LEXIS 180914, at *178 (E.D.N.Y. Oct. 15, 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)).

Here, the criterion is satisfied because there are numerous issues of fact and law common

---

[8] *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members[.]").

to the Settlement Class, including: (a) whether Defendant's representations regarding the Algal-900 DHA Products are false; (b) whether consumers have been misled and deceived by the advertisements and labels; (c) whether Defendant's conduct violates various state consumer protection laws; (d) whether Plaintiff and other Class Members have been injured and the proper measure of their losses as a result of those injuries; and (e) whether Plaintiff and Class Members are entitled to injunctive, declaratory or other equitable relief in connection with Defendant's alleged unlawful conduct.

### c.    Plaintiff's Claims Are Typical Of The Claims Of The Class

Rule 23(a)(3) is satisfied when "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).  "When the same unlawful conduct was directed at both the named plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Labbate-D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456–57 (E.D.N.Y. 1996) (internal quotation marks omitted).

Here, Plaintiff alleges that he purchased Algal-900 DHA from Defendant's pharmacy store on several occasions prior to filing this Action.  Am. Comp. ¶ 35 (ECF No. 7).   Plaintiff further alleges that Defendant made false and misleading representations concerning Algal-900 DHA Products' labels claiming that the Product was "clinically shown to improve memory" or offered "clinically shown memory improvement".  Am. Comp. ¶¶ 25-27.  Plaintiff alleges that these material misrepresentations caused him injury because he would not have purchased Algal-900 DHA Products had he known that the Product was not clinically shown to improve memory.  Am. Comp. ¶¶ 68, 82, 94, 106.  Plaintiff alleges that he suffered damages in the amount of the

purchase price paid for Algal-900 DHA Products because the Product was not clinically shown to improve memory.  *Id.*

Defendant's conduct caused similar injury to members of the Settlement Class.  All of Defendant's Algal-900 DHA Products were advertised as being "clinically shown to improve memory" or offering "clinically shown memory improvement". Am. Comp. ¶¶ 25-27. Moreover, Defendant's alleged misrepresentations regarding the Algal-900 DHA Products would be material to a reasonable consumer who was purchasing the Product for that reason.  *See Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) ("[A] material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.") (internal quotation marks omitted).  Because Plaintiff would seek to prove that he was harmed by the same overall course of conduct and in the same way as the Class, his claims are typical of the class.

### d.      Plaintiff Will Fairly And Adequately Protect Class Interests

The final prerequisite mandates that "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The requirement is met if the plaintiff: (1) is represented by counsel who is "qualified, experienced and able to conduct the litigation[;]" and (2) does not possess interests "antagonistic to the interest of other members of the class[.]" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Plaintiff's interests are consistent with, and not antagonistic to, the interests of other Settlement Class Members. Here, Plaintiff's claims are co-extensive with those of the Settlement Class.  Plaintiff and each Class Member were injured in the same manner, and Plaintiff asserts the same legal claims as those of the Class.  Thus, they share a common interest in establishing liability and securing maximum possible recovery.  Plaintiff has taken his obligations to the Settlement Class seriously.  He engaged in the prosecution of this matter, has consistently

26

conferred with his counsel, reviewed the various complaints and motions, consulted with his counsel regarding efforts to coordinate with plaintiffs' counsel in the *Worth* case and the propriety of the settlement.  Zimmerman Decl. ¶ 20.

Moreover, Plaintiff and his counsel have extensive experience in prosecuting and handling class actions and the types of claims asserted in this action.  Plaintiff was found by courts to be an adequate class representative in other cases, and *no* court has ever found Plaintiff to be an *inadequate* class representative in any case.  Zimmerman Decl. ¶¶ 14-15.  As noted above, Plaintiff's counsel has considerable experience in consumer class action and his experience demonstrates that the Settlement Class Members were well-represented. Zimmerman Decl. ¶¶ 16-19, and Exhibit H thereto.

### e.    Class Members Are Readily Identifiable And Ascertainable.

Rule 23 also contains an "implicit requirement that the class be precise and ascertainable."  *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG) (RER), 2008 U.S. Dist. LEXIS 15821, at *13 (E.D.N.Y. Mar. 2, 2008) (internal quotation marks omitted).  Here, the Class is readily identifiable because it consists of all persons in the United States who purchased for personal use an Algal-900 DHA Product between November 15, 2008 and the Preliminary Approval Date.  All Class Members are able to determine their membership in the Class.  Plus, Defendant has email and postal addresses for 152,027 Class Members, representing 77.8% of the Class.  KCC Decl. ¶¶ 23-28.  The Settlement Class is thus precise and readily identifiable.

### 2.    The Settlement Class Satisfies Rule 23(b)(3).

To qualify for certification under Rule 23(b)(3), the class must meet two criteria.  First, common questions of law or fact must "predominate" over any purely individual questions.  Fed. R. Civ. P. 23(b)(3).   Second, the class must demonstrate that class treatment is superior to other available methods for the fair and efficient adjudication of the controversy.  *Id*.  In the context of

a settlement class, the issue of manageability "drop[s] out of the predominance analysis because the proposal is that there be no trial." *In re Am. Int'l Grp. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (internal quotation marks omitted).  Instead, the court must take care to determine the legal or factual questions in each class member's case "are sufficiently similar to yield a cohesive class."  *Id.*

### a.      Common Questions Predominate Over Individual Issues

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  To meet this requirement, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 226 (2d Cir. 2006).

Predominance is satisfied here, where the pertinent issues center on whether Defendant's representations concerning Algal-900 DHA Products are false, misleading and likely to deceive the public.  Every Class Member's claim may be proven by the same set of facts regarding the clinical studies supporting the memory improvement claims of Algal-900 DHA Products. Indeed, the resolution of whether DHA algal oil is clinically shown, as a matter of scientific fact, to deliver the promised memory benefits is integral each Class Members' case and can be achieved through generalized proof.  Therefore, the predominance requirement is met.

### b.      A Class Action Is Superior To Alternative Methods of Adjudication

For certification under Rule 23(b)(3), the court must determine that class treatment is superior to other available methods of adjudication.  *See* Fed. R. Civ. P. 23(b)(3).  Class treatment is appropriate where, as here, "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue [and] there is reason to believe that class members may lack familiarity with the

legal system, discouraging them from pursuing individual claims." *Jankowski v. Castaldi*, No. 01-cv-0164 (SJF) (KAM), 2006 U.S. Dist. LEXIS 4237, at *13 (E.D.N.Y. Jan. 13, 2006) (internal quotation marks omitted).

Class treatment is not merely superior, but is the only manner in which to ensure fair and efficient adjudication of this action. Given that each Class Member's claim, individually, is of a relatively low value, individual Class Members will likely have little incentive to pursue his/her claim on an individual basis. A class action will allow individual Class Members to bring together claims that would be economically infeasible to litigate otherwise. Class treatment in the settlement context is also superior to individual suits or piecemeal litigation because it facilitates favorable resolution of all Settlement Class Members' claims and conserves scarce judicial resources. Therefore, a class action is a superior method of adjudicating this case.

### C.     The Proposed Class Notice And Notice Plan Are Reasonable

Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The best notice practicable under the circumstances includes individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). The proposed forms of notices should "fairly apprise the prospective members of the class of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement." *Reade-Alvarez*, 237 F.R.D. at 34.

The proposed forms of notices, attached as Exhibits B, C, D and G to the Settlement Agreement and discussed at Section 6 of the Settlement Agreement, satisfy the criteria in Rule 23(c)(2)(B). The notice contains all the necessary information, including: (1) a summary of the action and the claims asserted; (2) a plain definition of the Settlement Class; (3) a clear and

concise description of the terms of the settlement; (4) information regarding the claim criteria and instructions on how to make a claim; (5) disclosure of the release of claims by Class Members who do not opt out of the settlement; (6) an explanation of opt-out rights and information on how to do so; (7) instructions on how and when to object to the Settlement; (8) the date, time and location of the final approval hearing; (9) the address for the Settlement Website; and (10) the name and contact information for Class Counsel representing the Settlement Class.

As set forth above, combined, the email and postal individual notice effort is estimated to reach 152,027 Class Members, representing 77.8% of the Class.  KCC Decl. ¶¶ 23-28.  And the combined individual notice effort and supplemental media campaign is estimated to reach approximately 82.7% of likely Class Members on average 1.2 times each.  KCC Decl. ¶ 36.

Due to the nature of the consumer product at issue, not all individual Class Members can be identified through reasonable effort.  Under the Settlement Agreement, Defendant will cause the Settlement Notice to be published once in *People* magazine and twice in *USA Today* to inform Class Members of their rights under the terms of the agreement.  Defendant will also post Internet banner advertising to direct Class Members to the Settlement Website for a period of 30 days.  Indeed, "when class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process."  *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 107 (S.D.N.Y. 2007).[9]  In addition, Defendant will cause the Settlement Notice to be sent to through a combination of electronic and postal mail to 77.8% of the Class members.  Where a Class Member's email address is known, the Settlement Notice will be sent by electronic mail.  In the event an email notice is bounced back as

---

[9] *See also In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 169 (2d Cir. 1987) (holding that individual notice is not necessary for each of 2.4 million Vietnam veterans potentially exposed to Agent Orange where "no easily accessible list of veterans" existed, and "such a comprehensive list could [not] reasonably have been compiled.").

undeliverable, the Settlement Notice will be sent by postal mail, if possible.[10] This proposed form of direct notice has been approved in *Ebin v. Kangadis Food Inc*., Case No. 13-2311 (S.D.N.Y. Feb. 24, 2014) at ECF No. 96, and *Browning v. Yahoo! Inc*., No. C04-01463 HRL, 2006 U.S. Dist. LEXIS 100686, at *24 (N.D. Cal. Dec. 27, 2006).

The proposed notices are clear and straightforward. Further, the notice plan, designed by a respective expert on the means of providing effective class notice, is calibrated to provide broad and effective dissemination of the notice to the consumers of the Algal-900 DHA Products. *See* KCC Decl. Therefore, the content of the notices and comprehensive notice plan satisfies the requirement under Rule 23.

### D.   Plaintiff's Counsel Should Be Appointed As Class Counsel

Rule 23(g) requires a court to appoint class counsel when it certifies a class. In appointing class counsel, the court considers several factors: (1) work done by counsel in identification or investigation of the claims in the action; (2) counsel's experience; (3) counsel's knowledge of the applicable law; and (4) counsel's resources committed to representing the proposed class. Fed. R. Civ. P. 23(g)(1)(A).[11] All of these factors militate in favor of appointing Zimmerman Law Offices, P.C. as Class Counsel.

This firm spent a significant amount of time identifying and investigating Plaintiff's claims before filing the instant motion. Zimmerman Decl. ¶ 21. The parties engaged in informal discovery and Plaintiff's counsel has reviewed thousands of pages of documents relative to the issues in this Action. *See supra* at §§ IV.A.2 and IV.A.3.c. Counsel has extensive experience in class actions, particularly those involving alleged consumer frauds, as demonstrated by the

---

[10]   KCC will check addresses against public databases to verify their accuracy, and will further skip-trace addresses. KCC Decl. ¶ 24 and n.8.

[11]   *See also deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440 (DAB), 2010 U.S. Dist. LEXIS 38229, at *8 (S.D.N.Y. Apr. 19, 2010) ("The work that [plaintiffs' counsel] has performed both in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests.").

numerous times the firm and its attorneys have been appointed Class Counsel.  Zimmerman Decl. ¶¶ 16-19, and <u>Exhibit H</u> thereto.  This experience has provided counsel with extensive knowledge on the applicable law.  Finally, the firm is an established practice that is currently litigating dozens of cases in state and federal courts throughout the nation, and it has more than sufficient resources to represent the Class.  *See id.*

For the purposes of 23(g), the Court should appoint Plaintiff's counsel to act as Class Counsel for this Settlement Class.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the relief requested herein. A Proposed Order granting preliminary approval, certifying the Settlement Class, designating Plaintiff as Class Representative, appointing Class Counsel, approving the forms of notices, and setting deadlines related to class notice and final approval, is submitted herewith.


Dated: June 30, 2016                    By: <u>/s/ Thomas A. Zimmerman, Jr.</u>
                                             Thomas A. Zimmerman, Jr.
                                             *tom@attorneyzim.com*
                                             ZIMMERMAN LAW OFFICES, P.C.
                                             77 W. Washington Street, Suite 1220
                                             Chicago, Illinois 60602
                                             (312) 440-0020 telephone
                                             (312) 440-4180 facsimile
                                             www.attorneyzim.com

                                             Proposed Class Counsel and Counsel for the
                                             Plaintiff