## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| Mario Aliano, individually, and on behalf of all others similarly situated, | ) ) ) |  |
| Plaintiff, | ) ) | Case No. 1:16-cv-02624-FB-MDG |
| Jeff Worth and Robert Burns, | ) ) ) |  |
| Intervening Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| CVS Pharmacy, Inc., a Rhode Island Corporation, | ) ) ) |  |
| Defendant. | ) ) |  |

## REPRESENTATIVE PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT WITH CVS PHARMACY, INC.

Thomas A. Zimmerman, Jr.
(admitted *pro hac vice*)
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020
(312) 440-4180 (fax)
tom@attorneyzim.com

*Proposed Settlement Class Counsel*

In their objection to preliminary approval of this settlement ("*Worth* Objection"), the *Worth* plaintiffs spend the first 15 pages spewing *ad hominem* attacks at Plaintiff Mario Aliano ("Aliano") and his counsel, Thomas. A. Zimmerman, Jr. ("Zimmerman").  The rest of the *Worth* Objection raises issues with the settlement terms.

To avoid duplication, Plaintiff will address the *ad hominem* attacks in this reply brief, and Defendant will address the substantive settlement issues in its reply brief.

## I.   BACKGROUND

On January 29, 2016, the class settlement was announced in *Jovel, et al. v. i-Health, Inc.*, No. 12-cv-05614 (the "Jovel Action"), and a motion for preliminary approval of the class settlement was filed in the Jovel Action. Upon learning of that settlement, Aliano filed suit against CVS for its companion Algal-900 DHA product that he had been taking on several occasions for approximately one (1) year prior thereto. *See* Declaration of Mario Aliano ("Aliano Decl.") ¶¶ 3-6, attached hereto as Exhibit 1, and *see* photographs of some of Aliano's Algal-900 DHA product packaging that Aliano had on hand at the time this lawsuit was filed, attached to his Declaration as Exhibits A-B.

## II.   THERE WAS NO COLLUSION

As set forth in Plaintiff's Motion for Preliminary Approval, Zimmerman repeatedly reached out to plaintiffs' counsel in the *Worth* case in an effort to coordinate cases and reach a global resolution of both cases with Defendant, but plaintiffs' counsel in the *Worth* case ignored Zimmerman and excluded Zimmerman from their mediation with Defendant. *See* Motion for Preliminary Approval, pp. 13-15; and *see* Zimmerman Decl. ¶¶ 2-13, and Exhibits A-D thereto, which are attached as Exhibit 3 to the Motion for Preliminary Approval.

From the outset, Defendant wanted to settle this case and the *Worth* case on the same terms as the companion Jovel Action—settlement terms that had already received preliminary

approval by the court. Time was of the essence, as the parties contemplated a joint publication notice with the Jovel Action settlement, in order to save approximately $100,000 on notice costs. Zimmerman repeatedly reached out to objectors' counsel to work together on a coordinated, global settlement using the settlement terms in the Jovel Action as a guide, but they refused. After being completely shut out by the *Worth* plaintiffs, Zimmerman negotiated a settlement with Defendant that has more favorable settlement benefits and a more robust notice plan than what was preliminarily approved in the Jovel Action settlement.  Clearly, there was no collusion here.

Because this court ordered the parties in the Jovel Action to proceed with the publication and implementation of their class settlement, the parties in this case sought preliminary approval of this settlement in Illinois in order to avoid the delay associated with transfer of this case to New York so that they could achieve the cost savings from combined publication notice with the Jovel Action settlement.  The *Worth* plaintiffs mislead the court by stating that Judge Sharon Johnson Coleman (N.D. IL) "suggested that the *Aliano* parties were forum shopping."  *See*, *Worth* Objection at p. 6.  Judge Coleman transferred this case to this court because of this court's familiarity with the facts of the Jovel Action and the *Worth* case so that this court could assess the fairness of the settlement in the overall context of all of the related litigation, especially since this case is going to share a joint publication notice with the Jovel Action settlement.

Judge Coleman never made any findings of collusion. To the contrary, Judge Coleman stated:

> Of course, a willingness to settle is not per se evidence of inadequate class representation. The opposite may be true; it could be Intervenors who have taken an unreasonable positon in *Worth* that is not in the class' best interest.

*See* Order entered by Judge Coleman, dated May 11, 2016, attached hereto as <u>Exhibit 2</u>, at p. 2.

Judge Coleman's statement is spot on — *Worth* plaintiffs' counsel insisted on a common fund settlement solely to maximize their attorney's fees as a percentage of the fund, rather than on a lodestar basis.

On March 22, 2016, after exchanging emails with Craig Briskin ("Briskin") to schedule a phone call, Zimmerman called and spoke with Briskin by telephone. Zimmerman expressed his interest in working with *Worth* plaintiffs' counsel to enter into a global settlement with CVS including both the *Aliano* and *Worth* actions. Zimmerman discussed with Briskin the Jovel Action, the similarities between the products and allegations in the Jovel Action and the products and allegations in *Aliano* and *Worth*, the terms of the Jovel Action settlement, and that those terms were negotiated after 3-4 years of litigation. *See* Supplemental Declaration of Thomas A. Zimmerman, Jr. ("Suppl. Zimmerman Decl.") ¶ 3, which is being filed concurrently with this Reply Brief.

Zimmerman stated that the *Aliano* and *Worth* actions could be settled on similar terms that had already been preliminarily approved by the court in the Jovel Action. But Briskin expressed reluctance to those settlement terms for the stated reason that the attorneys' fees agreed to in the Jovel Action were higher than he and his co-counsel could obtain since the *Worth* action was recently filed and their lodestar would not be as high as it presumably is in the Jovel Action.  Briskin stated that "there are a lot of mouths to feed" in the *Worth* action, referring to the fact that there were three (3) firms representing the plaintiffs in *Worth*.  Suppl. Zimmerman Decl. ¶ 3.

Briskin stated that he and his co-counsel could get a much higher fee if the settlement created a common fund so that the attorneys' fees would be based upon a percentage of the fund, rather than using a claims-made settlement with fees justified by the lodestar approach. It was clear that counsel for the *Worth* plaintiffs wanted to hold out for a common fund solely for their

benefit, rather than to benefit the class members. The call ended with Briskin saying he would have to talk to the other *Worth* plaintiffs' counsel to see what they wanted to do. Suppl. Zimmerman Decl. ¶ 3. *Worth* plaintiffs' counsel proceeded to mediation with their common fund settlement demand, and the mediation failed.

As implied by Judge Coleman, perhaps it is "Intervenors who have taken an unreasonable positon in *Worth* that is not in the class' best interest."  Zimmerman decided it would be better for the class to discuss settlement based on terms that had already been approved by the court in the Jovel Action.  This would allow the parties to quickly resolve the matter, promote judicial efficiency, realize a $100,000 cost savings by using shared publication notice with Jovel, and expeditiously get monetary relief (including refunds of the entire purchase price) in the hands of class members and equitable relief implemented to change the product's misrepresentations on the packaging.  Zimmerman is acting in the best interests of the class, unlike objectors' counsel who seek only to maximize their attorneys' fee because, according to Briskin, they have "a lot of mouths to feed" in the *Worth* action.

## III.    MARIO ALIANO IS AN ADEQUATE PLAINTIFF

As set forth in Plaintiff's Motion for Preliminary Approval, Aliano has experience in prosecuting and handling class actions and the types of claims asserted in this action.  Aliano was found by courts to be an adequate class representative in other cases, and *no* court has ever found Aliano to be an *inadequate* class representative in any case.  *See* Zimmerman Decl. ¶¶ 14-15, and Exhibits E-G thereto.

In the sworn Declaration of Briskin and similarly in the *Worth* Objection, the *Worth* plaintiffs mislead the court when they assert that Aliano was a plaintiff in "dozens of cases".  *See* Briskin Declaration ¶ 4, and Exhibit 1 thereto. *See also*, *Worth* Objection at p. 4, n. 1.

The *Worth* plaintiffs mislead the court by listing two (2) lawsuits against the National Football League ("NFL"), and attributing them to Aliano as being two (2) separate and distinct lawsuits that Aliano filed, when they are not.  In fact, the lawsuit Aliano filed (15-cv-5508) was ultimately merged into a consolidated complaint which was thereafter consolidated in nationwide Multidistrict Litigation with all of the other similar cases filed against the NFL, and the consolidated cases were re-captioned as the *National Football League Sunday Ticket Antitrust Litig.* (15-ml-2668).

The *Worth* plaintiffs further mislead the court by listing two (2) lawsuits against Lifelock, and attributing them to Aliano as being two (2) separate and distinct lawsuits that Aliano filed, when they are not.  In fact, the lawsuit Aliano filed against Lifelock (08-cv-4401) was consolidated in nationwide Multidistrict Litigation with all of the other similar cases filed against Lifelock, and the Aliano case was simply reassigned a new case number after it was transferred to Arizona (08-cv-2164).  Thereafter, the consolidated cases were re-captioned as the *Lifelock Marketing and Sales Practices Litig.*

The *Worth* plaintiffs further mislead the court by listing two (2) lawsuits against RadioShack, and attributing them to Aliano as being two (2) separate and distinct lawsuits that Aliano filed, when they are not.  In fact, the lawsuit Aliano filed against RadioShack (11-cv-7819) was consolidated with the *Redman* case (11-cv-6741), which was a separate case filed by a different plaintiff.

The *Worth* plaintiffs further mislead the court by listing two (2) lawsuits against Comcast, and attributing them to Aliano as being two (2) separate and distinct lawsuits that Aliano filed, when they are not.  In fact, the lawsuit Aliano filed against Comcast (09-cv-5320) was consolidated in nationwide Multidistrict Litigation with all of the other similar cases filed

against Comcast, and the Aliano case was simply reassigned a new case number after it was transferred to Pennsylvania (09-cv-288).

These are just some examples of the *Worth* plaintiffs' deception. There are more. For example, the *Worth* plaintiffs mislead the court by declaring that Aliano filed a lawsuit against Amerigas Partners (07-cv-4110). In fact, Aliano was never a plaintiff in this lawsuit, as it was filed by a different person with the same name.

Without any basis in fact, the *Worth* plaintiffs assert that Aliano has a "close business relationship" with Zimmerman. *See*, *Worth* Objection at p. 12. To the contrary, Aliano does not have any business relationships with Zimmerman, his law firm, or any other attorneys or employees of the law firm. *See* Aliano Decl. ¶ 7; Suppl. Zimmerman Decl. ¶ 2. Moreover, Aliano does not have any personal relationship with Zimmerman, his law firm, or any other attorneys or employees of the law firm, and they do not socialize together. *See* Aliano Decl. ¶ 7; Suppl. Zimmerman Decl. ¶ 2. The *Worth* plaintiffs should be sanctioned for misleading the court and making spurious accusations with not a shred of factual support.

## IV.   OBJECTORS' COUNSEL HAS A HISTORY OF USING INADEQUATE PLAINTIFFS WHO NEVER BOUGHT THE PRODUCT

Objectors' counsel, Briskin and his firm Mehri & Skalet, PLLC, as well as Maia Kats ("Kats") and her Center for Science in the Public Interest ("CSPI"), represented the plaintiffs in a putative class action lawsuit against Safeway, Inc. for allegedly failing to adequately notify its customers when food products that they purchased were subject to recalls. *See Hensley-Maclean, et al v. Safeway, Inc.*, No. 11-cv-1230 (N.D. Cal.). However, it was subsequently revealed in discovery that neither of their clients actually purchased any Safeway products that were subject to any recalls. The court found that their clients "had no evidence to substantiate

their purported purchase from Safeway." *See* Order Dismissing Claims of Named Plaintiffs, at p. 3, attached hereto as <u>Exhibit 3</u>.

Accordingly, the court dismissed their plaintiffs from the lawsuit for failing to have purchased any products that were the subject of their lawsuit. This demonstrates how "thorough" of an investigation *Worth* plaintiffs' counsel conducts prior to filing suit.

## V.    ZIMMERMAN IS ADEQUATE CLASS COUNSEL

### A.    Zimmerman Thoroughly Investigated The Case.

As set forth in Plaintiff's Motion for Preliminary Approval, Zimmerman spent a significant amount of time identifying and investigating the claims before settling the case. Zimmerman Decl. ¶ 21. The parties engaged in informal discovery and Zimmerman reviewed thousands of pages of documents relative to the issues in this case. *See* §§ IV.A.2 and IV.A.3.c. in the Motion for Preliminary Approval.

For instance, Defendant informally produced over 3,200 documents to Zimmerman, including scientific studies and journal articles supporting the efficacy of the Algal-900 DHA product's heart, eye and brain structure-function health claims, as well as comparative sales figures and class data for the Algal-900 DHA product and the BrainStrong product at issue in the Jovel Action. These documents were subsequently provided to counsel for the *Worth* plaintiffs, who—after reviewing these documents—apparently now take no issue with the adequacy of Zimmerman's investigation.

### B.    Zimmerman Has Filed Numerous "First-Filed" Class Action Lawsuits.

The *Worth* plaintiffs are wrong to assert that Zimmerman has a pattern of filing over first-filed cases. Zimmerman has filed dozens of "first-filed" class actions. The following is a partial list of twenty (20) class action cases where Zimmerman filed the first class action lawsuit, was appointed Class Counsel, and obtained relief on behalf of class members:

- Zimmerman appointed Class Counsel — *In re Commonwealth Edison 1999 Summer Power Outages*, No. 99 CH 11626 (Cook Cnty, Ill.). Recovery for a statewide class of businesses and individuals who sustained financial damages due to widespread and prolonged power outages.

- Zimmerman appointed Class Counsel — *Martin, et al. v. KCBX Terminals Company, et al.*, No. 13 cv 08376 (N.D. Ill.).  Recovery for a statewide class of individuals and businesses who suffered from an infiltration of coal and petroleum coke dust in the air and on their property.

- Zimmerman appointed Class Counsel — *Phillips Randolph Enterprises, LLC v. Home Run Inn, Inc.*, No. 08 CH 43273 (Cook Cnty, Ill.). Recovery for a statewide class of individuals and businesses who sustained damages resulting from the receipt of unsolicited facsimile advertisements.

- Zimmerman appointed Class Counsel — *Dudzienski v. GMRI, Inc.*, No. 07 cv 3911 (N.D. Ill.). Recovery for a nationwide class of over 36 million consumers whose personal information was improperly disclosed.

- Zimmerman appointed Class Counsel — *Allen v. Illinois School of Health Careers, Inc.*, No. 10 CH 25098 (Cook Cnty, Ill.). Recovery, representing nearly the full value of each class member's loss, for a statewide class of individuals who enrolled in a school based on the school's misrepresentations that it was accredited.

- Zimmerman appointed Class Counsel — *O'Brien v. Paninos, Inc.*, No. 10 cv 2991 (N.D. Ill.). Recovery for a statewide class of over 60,000 consumers whose personal information was improperly disclosed.

- Zimmerman appointed Class Counsel — *Aliano v. Airgas USA, LLC*, No. 14 CH 20024 (Cook Cnty, Ill.). Recovery for a nationwide class of consumers whose personal information was improperly disclosed.

- Zimmerman appointed Class Counsel — *Derose Corp. v. Goyke Health Center*, 06 CH 6681 (Cook Cnty, Ill.). Recovery for a nationwide class of businesses and individuals who sustained damages resulting from the receipt of unsolicited facsimile advertisements.

- Zimmerman appointed Class Counsel — *Cardenas v. Mead Johnson & Company*, No. 01 CH 11151 (Cook Cnty, Ill.). Recovery for a nationwide class of Spanish speaking purchasers of baby formula, arising out of misleading product labeling.

- Zimmerman appointed Class Counsel — *Radaviciute v. Christian Audigier, Inc.*, No. 10 cv 8090 (N.D. Ill.). Recovery for a nationwide class of consumers whose personal information was improperly disclosed.

- Zimmerman appointed Class Counsel — *In re Subway Footlong Sandwich Marketing and Sales Practices Litigation*, No. 2:13-md-02439 (E.D. Wis.). Equitable relief recovery for a nationwide class of individuals who were sold submarine sandwiches materially shorter than advertised.

- Zimmerman appointed Class Counsel — *Aliano v. Joe Caputo and Sons – Algonquin, Inc*., et al., No. 09 cv 0910 (N.D. Ill.). Recovery for a statewide class of consumers whose personal information was improperly disclosed.

- Zimmerman appointed Class Counsel — *Due Fratelli, Inc. v. Proximo Spirits, Inc.*, No. 2014 CH 17429 (Cook Cnty, Ill.). Recovery for a nationwide class of businesses and individuals who purchased spirits whose labeling misstated the characteristics of the product.

- Zimmerman appointed Class Counsel — *Joseph v. Marbles, LLC*, No. 13 cv 4798 (N.D. Ill.). Recovery for a nationwide class of consumers whose personal information was improperly disclosed.

- Zimmerman appointed Class Counsel — *DiParvine v. A.P.S., Inc. d/b/a Car Quest Auto Parts*, No. 11 cv 6116 (N.D. Ill.). Recovery for a nationwide class of consumers whose personal information was improperly disclosed.

- Zimmerman appointed Class Counsel — *Phillips Randolph Enterprises, LLC v. Key Art Publishing Co.,* No. 07 CH 14018 (Cook Cnty, Ill.). Recovery for a statewide class of individuals and businesses who sustained damages resulting from the receipt of unsolicited facsimile advertisements.

- Zimmerman appointed Class Counsel — *Izak-Damiecki v. World Gym International, LLC*, No. 10 CH 18845 (Cook Cnty, Ill.). Recovery for a statewide class of individuals whose health club membership agreements provided for improper membership terms.

- Zimmerman appointed Class Counsel — *Papeck, et al. v. T.N. Donnelly & Co.*, No. 09 CH 31997 (Cook Cnty, Ill.). Recovery, representing the maximum amount of statutory damages, for a nationwide class of customers who obtained loans whose terms violated the Truth in Lending Act, plus equitable relief to modify the loan contract to conform with the law.

- Zimmerman appointed Class Counsel — *In re Kathy Aliano v. Hancock Fabrics, Inc.*, No. 07-10353 (Del. Bkpt). Recovery for a nationwide class of tens of thousands of consumers whose personal information was improperly disclosed.

- Zimmerman appointed Class Counsel — *Brady, et al. v. Learning Curve Int'l, Inc*., *et al.*, No. 06 CH 03056 (Cook Cnty, Ill.). Recovery on behalf of a nationwide class of customers who had their warranty retroactively changed from a lifetime guarantee to a 90-day guarantee, plus equitable relief to reinstate the lifetime guarantee on the products.

As this extensive list shows, Zimmerman routinely files the "first-filed" class action lawsuit in cases around the country. In every one of these cases, the courts found Zimmerman to be competent and qualified, and appointed Zimmerman as Class Counsel.

Zimmerman has extensive experience in class actions, particularly those involving alleged consumer frauds, as demonstrated by the numerous times Zimmerman has been appointed Class Counsel.  Zimmerman Decl. ¶¶ 16-19, and Exhibit H thereto.

## C. *Worth* Plaintiffs' Counsel File Class Action Lawsuits After A Lawsuit Was First Filed.

Objectors cast aspersions on Zimmerman because this lawsuit was filed ten (10) days after the *Worth* lawsuit was filed.  However, as is common in nationwide class action litigation, numerous class action lawsuits are frequently filed around the country arising out of a defendant's alleged misconduct. It goes without saying that the cases are *not* all filed on the same day (or in the same court). In fact, *Worth* plaintiffs' counsel frequently file class action lawsuits *after* similar class action cases have already been filed.  For example:

- *Domestic Airline Travel Litigation*, No. 15-mc-1404 (D. DC) — First case filed on July 6, 2015 (*Blumenthal v. American Airlines*).  Briskin filed a lawsuit over three (3) months later, on October 19, 2015 (*Kellam v. American Airlines Group*). *See* Exhibit 4.

- *FNMA Litigation*, No. 13-cv-1025 (D. DC) — First case filed on July 7, 2013 (*Perry Capital v. Lew*).  Briskin filed a lawsuit over two (2) months later, on September 20, 2013 (*Borodkin v. FNMA*).  *See* Exhibit 5.

- *Green Mountain Litigation*, No. 14-cv-905 (S.D.N.Y.) — First case filed on February 11, 2014 (*Treehouse Foods v. Green Mountain*).  Briskin filed a lawsuit over two (2) months later, on April 29, 2014 (*Quackenbush v. Keuring Green Mountain*).  *See* Exhibit 6.

- *VISA Litigation*, No. 11-cv-1803 (D. DC) — First case filed on October 12, 2011 (*National ATM Council v. Visa*).  Briskin filed a lawsuit six (6) days later, on October 18, 2011 (*Genese v. Visa*).  *See* Exhibit 7.

- *Coopervision Litigation,* No. 15-cv-60466 (S.D. FL) — First case filed on March 9, 2015 (*Cesare v. Coopervision*).  Briskin filed a lawsuit four (4) days later, on

March 13, 2015 (*Loera v. Coopervision*).  *See* Exhibit 8.

There is nothing unusual in nationwide class action litigation for more than one case to be filed against the same defendant arising out of the same alleged misconduct. To the contrary, it frequently occurs. Here, this case was filed only ten (10) days after *Worth* was filed. As shown above, Briskin and his firm have filed class action lawsuits over three (3) months *after* the first such lawsuit was filed.

### D.  Even Where Zimmerman's Cases Are Not The "First-Filed", Zimmerman Has Been Appointed As Plaintiffs' Lead Counsel, Co-Lead Counsel, Or To The Plaintiffs' Executive Committee.

As regularly occurs in class action litigation, numerous complaints may be filed and maintained regarding the same or similar issues and parties. Even where attorneys do not file the first-filed case, attorneys may still receive court appointments based on their reputation, experience and skills.

In several instances where Zimmerman's cases were not the first-filed class action case, Zimmerman was nevertheless appointed as Plaintiffs' Lead Counsel, Co-Lead Counsel, or to Plaintiffs' Executive Committee. Some of these cases include:

- Zimmerman appointed Class Counsel — *PrimeCo Personal Communications, et al. v. Illinois Commerce Commission, et al.*, 98 CH 5500 (Cook Cnty, Ill.). Recovery for a statewide class of businesses and individuals who paid an improper municipal infrastructure maintenance fee on their cellular phone bills.

- Zimmerman appointed Class Counsel — *Due Fratelli, Inc. v. Templeton Rye Spirits, LLC*, No. 2014 CH 15667 (Cook Cnty, Ill.). Recovery for a nationwide class of businesses and individuals who purchased whiskey whose labeling misstated the characteristics of the product.

- Zimmerman appointed Class Counsel — *In re A Million Little Pieces Litigation*, No. 06-md-1771 (S.D. NY). Recovery for a nationwide class of customers who purchased a fictional book while under the impression that the book was a non-fiction memoir.

- Zimmerman appointed Class Counsel — *Wendorf, et al. v. Landers, et al.*, No. 10 cv 1658 (N.D. Ill.). Recovery for a statewide class of individuals who were

members of a health club that debited its members' bank accounts without adequate notice or authority.

- Zimmerman appointed to Executive Committee — *In re Chicago Sun-Times Circulation Litigation*, No. 04 CH 9757 (Cook Cnty., Ill.). Recovery for a nationwide class of businesses and individuals who placed advertisements in a newspaper based on fraudulent circulation figures.

- Zimmerman appointed to Executive Committee — *In re Ashley Madison Customer Data Security Breach Litigation*, MDL No. 2669 (E.D. Mo.). *Pending* — Class action for a nationwide class of individuals who had their personal and financial data stolen due to insufficient protection of that information by an internet service provider, and who also paid money to that provider based on misrepresentations.

State and federal courts across the country have found Zimmerman to be respected, well-qualified class counsel to lead complex class actions where multiple lawsuits were filed.

### E.      Zimmerman Has An Impeccable Reputation As Being Honest And Ethical.

Zimmerman has always acted ethically and appropriately, and has never been sanctioned. In 2003, the Illinois Governor appointed Zimmerman to the Illinois Courts Commission, where Zimmerman currently serves. A Commission member presides over proceedings wherein judges are charged with committing ethical violations, and imposes discipline on judges who are found to have engaged in misconduct. *See* Zimmerman Decl., and <u>Exhibit H</u> thereto.

Additionally, in 2003, the Illinois Supreme Court appointed Zimmerman to the Review Board of the Attorney Registration and Disciplinary Commission ("ARDC").  He served in that capacity until 2011, wherein he presided over appeals by attorneys who have been found to have committed misconduct, and recommended discipline for their ethical violations.  In 2013, the ARDC appointed Zimmerman as Special Counsel, wherein he currently conducts independent investigations in matters involving allegations of misconduct against attorneys associated with the ARDC. *Id.*

Zimmerman has an impeccable reputation for ethics and high standards not just in Illinois, but also across the country. This is further demonstrated by the fact that Zimmerman has been appointed Class Counsel in dozens of class action lawsuits in state and federal courts throughout the nation.

### F.   No Misconduct Occurred In The *Best Buy* Case.

The *Worth* plaintiffs assert that Zimmerman filed a "copycat complaint" in a case against Best Buy "with a plaintiff that it had used in at least 12 other class cases." *See Worth* Objection at p. 14. The *Worth* plaintiffs cite the Declaration of attorney Josh Arisohn ("Arisohn") as the source and authority for the foregoing assertions they make to this court. *Id.*

Zimmerman and Arisohn are competing for lead counsel in the *Best Buy* case. Arisohn repeatedly lied to the court and his firm, Bursor & Fisher, P.A., was found in contempt, sanctioned, and almost thrown in jail. In *Ebin, et al. v. Kangadis Foods, et al.,* 13-cv-2311 (S.D.N.Y.), the court stated, "I am very much interested to hear from plaintiffs' counsel because, based on at least what I have received in writing from them, this appears to be perhaps the single greatest act of contempt that I have encountered in my court in 18 years." *See* Exhibit 9, Tr. April 11, 2014 Hearing, at p. 5 lines 11-15.

The court further stated:

> We are here on defendants' motion for contempt and sanctions.  The reason I inquired about Mr. Bursor is that, at least tentatively, I am considering initiating on the court's own motion criminal contempt against him so that he can spend some time in prison for what appears to have been a very clear-cut, willful contempt.

Exhibit 9, at p. 2 line 24 through p. 3 line 3.

The court stated: "I am not going to trust the word of plaintiff anymore." *See* Exhibit 9, at p. 14 line 21 through p. 15 line 4. The court ordered Arisohn's firm to pay $20,335 in attorneys'

13

fees and costs to their opposing counsel, and a separate $20,000 sanctions fee to the Court. *See* Exhibit 10, April 30, 2014 Order Imposing Sanctions.

This is who the *Worth* plaintiffs cite as "authority" for their assertion that Zimmerman engaged in collusion in the *Best Buy* case. Arisohn's and the Bursor firm's misstatements are more fully set forth in plaintiff's opposition brief filed in *Best Buy*, attached hereto as Exhibit 11.

The *Worth* plaintiffs are working in concert with Arisohn to use the court as a pawn to try to get a favorable opinion against Zimmerman in one case so they can use it against Zimmerman in another case. For example, *Worth* plaintiffs' counsel, Kats from the CSPI, drafted and filed a Declaration in the *Best Buy* case in support of Arisohn, wherein Kats made unsupported accusations of "collusion" in this case in an attempt to assist Arisohn to get a favorable decision in the *Best Buy* case that she could then try to use against Zimmerman here. *See* Declaration of Maia Kats, filed in the *Best Buy* case, attached hereto as Exhibit 12.

### G.     No Misconduct Occurred In The *Trader Joes* Case.

In their objection, the *Worth* plaintiffs also refer to three ongoing cases – the *Magier* case (S.D.N.Y.), the *Aliano* case (filed by Zimmerman in Illinois), and the *Joseph* case (C.D. Cal.) – against Trader Joe's Company for the alleged under-filling of tuna cans. In an attempt to paint Zimmerman in a false light, objectors completely mischaracterize Zimmerman's involvement in these cases…again, based solely on the unsubstantiated Declaration of Arisohn

First, objectors claim that "Zimmerman copied the *Magier* complaint verbatim down to the proprietary testing results, which he had not even seen." *See Worth* Objection at p. 14. Objectors' claim is outright false. Although both complaints rely on the same test results and theories of liability, their similarities end there. For example, the complaint in *Aliano* is more than twice as long as the complaint in *Magier*, includes legal research from state and federal

regulations that the complaint in *Magier* does not include, and sets forth unique causes of action not set forth in the *Magier* complaint.

Next, the "test results," to which objectors refer were from tests performed by the Southwest Seafood Inspection Branch of the National Oceanic and Atmospheric Organization, a national administrative government agency.  As such, the test results in question are public records, which Zimmerman obtained and personally reviewed before filing the *Trader Joe's* complaint.  It is important to note that in *In re: Trader Joe's Company Tuna Marketing and Sales Practice Litigation* (MDL No. 2711), Zimmerman **attached** those test results to Aliano's responsive pleading.  *See*, cover page of *Plaintiff Kathy Aliano's Reply Memorandum in Support of Her Motion for Coordination or Consolidation and Transfer Pursuant to 28 U.S.C. 1407*, attached hereto as <u>Exhibit 13</u>, and NOAA Test Results, attached as "Exhibit C" to <u>Exhibit 13</u>.

Objectors' misrepresentation to this court that Zimmerman has never seen those test results—even after Zimmerman produced them before the JPML—is consistent with objectors' pattern of saying and doing anything, including lying to the court, for their own self-interest.

**H.    No Misconduct Occurred In The *Quaker Oats* Case.**

The *Worth* plaintiffs further attempt to distract the court from the merits of the settlement in this case by referencing nationwide class action litigation filed against Quaker Oats.  *See Worth* Objection at pp. 4-15.  There, five (5) separate lawsuits were filed against Quaker Oats in three (3) different states: Illinois (3 cases), California, and New Jersey. The first case was filed on March 1, 2016 (16-cv-1442, C.D. Cal.), Zimmerman's case was filed on March 11, 2016 (16-cv-3087, ND IL), and the remaining cases were filed on April 7, 2016 (16-cv-1944, D. NJ), April 13, 2016 (16-cv-4293, ND IL), and June 14, 2016 (16-cv-6215, ND IL).

The usual and customary allegations of "collusion" were hurled at all of the plaintiffs' counsel in *Quaker Oats*. The court rightfully ignored them, stating:

The Court:   Note that I made no reference to nor did I take any consideration of allegations, which I would characterize as nothing more, of any kind of collusion. I'm not sure I would even use the word "collusion." But whatever relationship there may be between your client – between your office and any other office representing any other plaintiff, I will assume is zero. It really – I can understand that you would be unhappy about those statements, but I didn't – not only didn't take them seriously, but I assumed they were completely unproven, which is what you –

Mr. Barnow:   Well, unproven and untrue. And I understand –

The Court:   Right.

See Report of Proceedings Before the Honorable Rebecca Pallmeyer, July 8, 2016, pp. 6-7, attached hereto as Exhibit 14.   Thereafter, Judge Pallmeyer struck Quaker Oats' brief that contained the baseless accusations of "collusion".   See Exhibit 14, p. 7.

## I.   Truth In Advertising, Inc. Is Working In Concert With CSPI.

The Truth in Advertising organization ("TINA")—the purported "independent" *amicus curiae*—is also working in concert with Kats and the CSPI. In its complaint to the FTC, the TINA stated that it "has recently learned from the Center for Science in the Public Interest" that the CVS Algal-900 DHA product is purportedly in violation of an FTC order.   *See* TINA complaint letter to the FTC, dated June 3, 2016, attached hereto as Exhibit 15.   Kats fed the information and documents to TINA, and Kats is using TINA as a "stalking horse" to try to get the FTC to make a favorable ruling that CSPI can use to its benefit in this case.   The FTC never acted on TINA's complaint, so Kats got TINA to follow-up with a frivolous objection to this settlement.   TINA is *not* an independent *amicus curiae* here; TINA is being used as a tool of Kats and the CSPI.

This is not the first frivolous objection to a class settlement that the TINA has filed. TINA's *amicus curiae* brief in *In re Glaceau Vitaminwater Marketing and Sales Practices Litigation*, Case No. 1:11-md-2215-DLI-RML (E.D.N.Y.), asserted objections to a class action

16

settlement. In *Glaceau*, the plaintiffs alleged that defendant's labeling and marketing of vitamin water was deceptive. The court found the objections to the settlement made by *amicus curiae* TINA were "meritless" and overruled them. *See* Exhibit 16 hereto, ¶ 6 of the Final Approval Order (Levy, J., Apr. 7, 2016) ("[T]he Court finds that the substance of the objections to the Settlement made by Mr. Helfand and *amicus curiae* [TINA] are meritless.").

Likewise, TINA's objections to another class action settlement for other state classes were overruled in Ohio proceedings. *See* Exhibit 17 hereto, Final Approval Order and Judgment of Dismissal with Prejudice in *Volz v. The Coca Cola Company and Energy Brands, Inc.*, Case No. 1:10-cv-879 (S.D. Ohio) (Barrett, J., Mar. 30, 2015) at pp. 3-4. The Ohio court found that the defendant's changes in labeling and marketing as a result of the lawsuit and settlement were significant and achieved some of the goals of the underlying complaint. *Id.*

Here again, TINA has lodged another frivolous *amicus curiae* objection.

## VI.   *WORTH* PLAINTIFFS' COUNSEL NEGOTIATED CLAIMS-MADE CLASS SETTLEMENTS WHEN THE IDENTITIES OF THE CLASS MEMBERS WERE KNOWN.

The *Worth* Plaintiffs complain that the settlement provides that a class member must submit a claim form and that, instead, CVS should provide automatic compensation to class members. *Worth* Objection at p. 29. As the settlements negotiated and agreed to by *objectors' counsel* demonstrate, the provision that a class member submit a claim form is often used even where the identities of class members are known.

In *Adam Berkson, et al. v. Gogo LLC and Gogo Inc.*, Case No. 1:14-cv-01199-JBW-LB (E.D.N.Y.), a case in which Michael Reese ("Reese") is the attorney for the plaintiffs and stands to receive $750,000 in attorneys' fees, the lawsuit claims that "customers purchased in-flight Internet service from Gogo believing they would only be charged for one month of service, but that Gogo continued to charge customers monthly for the service even though customers did not

use the service after the month in which it was purchased and did not know they would be charged monthly for the service." *See* http://gogoclassaction settlement.com/frequently-asked-questions-2/ (last visited Aug. 29, 2016). The case settled and the settlement provided that summary notice of the settlement would be emailed to class members. *See* Exhibit 18 hereto, Gogo Settlement Agreement at ¶¶ 3.2, 3.3, 4.1, 7(b). In *Gogo*, even though the identities of class members, as well as their credit card information, was known to the defendant, the only way to get a benefit from the settlement was to submit a claim form. *See* http://gogoclassactionsettlement.com/ (last visited Aug. 29, 2016) (in chart on the settlement website homepage); *see also* Exhibit 19 hereto (Gogo Class Action Settlement Claim Form).

In *Howerton v. Cargill, Inc*., Case No. 13-CV-00336 (D. Hawaii), Reese was one of the attorneys for settlement class members in a case that alleged the defendant misled consumers by advertising Truvia as a natural sweetener, when in actuality it is largely synthetic and chemically-produced, and more expensive than its sugar-alternative competitors. *See* Exhibit 20 hereto, *Truvia* Settlement Agreement at p. 2. Notice of the settlement included the sending of direct mail notice to settlement class members who were direct purchasers from Cargill. *Id.* at ¶ 5.1(a)(v); and Declaration of Jeffrey Dahl at ¶¶ 5, 8-12. Despite having mailing addresses for a large number of settlement class members, those class members still had to follow the settlement claims process and submit a claim form to obtain benefits, and Reese's attorneys' fee was $1.83 million. *Id.* at ¶¶ 4.2(c), 8.1.

*In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015), Briskin was one of settlement class counsel (who received $1.76 million in attorneys' fees) in a case involving defective adaptors for MacBook Pro computers ("MagSafe Adapters"). The plaintiffs alleged that the MagSafe Adapters had problems of fraying, sparking, melting and overheating. *Id.* at *1. The notice plan included email notice and

18

mailing postcards to purchasers. *Id.* at *10. Despite knowing the identities of these class members and their addresses, the settlement required class members to submit a claim form in order to obtain benefits. *Id.* at *4.

There were no automatic refund payments in those class settlements.  As *objectors' counsel's* own cases illustrate, claim forms are commonly used in class action settlements even where the identities of class members are known.

**VII.   CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant the relief requested herein. A Proposed Order granting preliminary approval, certifying the Settlement Class, designating Plaintiff as Class Representative, appointing Class Counsel, approving the forms of notices, and setting deadlines related to class notice and final approval, is submitted herewith.

Mario Aliano, individually, and on behalf of all others similarly situated,

By:  /s/ Thomas A. Zimmerman, Jr.
       Thomas A. Zimmerman, Jr.
       *tom@attorneyzim.com*
       ZIMMERMAN LAW OFFICES, P.C.
       77 W. Washington Street, Suite 1220
       Chicago, Illinois 60602
       (312) 440-0020 telephone
       (312) 440-4180 facsimile
       www.attorneyzim.com

Proposed Class Counsel and Counsel for the Plaintiff

**CERTIFICATE OF SERVICE**

Thomas A. Zimmerman, Jr., an attorney, hereby certifies that he caused the above and foregoing *Reply Brief* to be served upon counsel of record in this case via the U.S. District Court CM/ECF System, on this day August 30, 2016.


 s/Thomas A. Zimmerman, Jr.

20