UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x
MARIO ALIANO, on behalf of himself and all others    :
similarly situated,                                    :

                                     :       REPORT &
                    Plaintiff,        :       RECOMMENDATION
                                     :       16-CV-2624 (FB) (SMG)
     -against-                      :

                                     :
CVS PHARMACY, INC.,              :

                                   :
                  Defendant.       :
---------------------------------------------------------------------- x

GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

Plaintiff Mario Aliano ("Aliano") brings this class action against defendant CVS

Pharmacy, Inc. ("CVS") in connection with CVS's marketing of a dietary supplement called

"Algal-900 DHA."  Amended Class Action Complaint ("AC") ¶¶ 7-9, Docket Entry 7.  In a

related case, pending before this Court, plaintiffs Jeffrey Worth and Robert Burns likewise sued

CVS in connection with its distribution of Algal-900 DHA.  Complaint ¶ 13, Worth v. CVS

Pharmacy, Inc., No. 16-0498 (E.D.N.Y. Feb. 1, 2016) ("*Worth* Compl.").[1]  At the time relevant

---

[1] Many of the documents filed in this matter appear on the dockets of both cases.  Except where otherwise
specifically noted, the docket numbers here refer to *Aliano v. CVS Pharmacy Inc.*, 16-cv-2624 (FB) (SMG).  The
documents referenced hereinafter are abbreviated as follows: Defendant's Notice of Removal, ("Notice of
Removal"), Docket Entry 1; Representative Plaintiff's Motion and Memorandum of Law in Support of Preliminary
Approval of Class Action Settlement Agreement with CVS Pharmacy, Inc. ("First *Aliano* Mot."), Docket Entry 11;
Order dated May 11, 2016 ("Transfer Order"), Docket Entry 30; Notice of Motion for Preliminary Approval of
Class Action Settlement Agreement with CVS Pharmacy, Inc. ("Second *Aliano* Mot."), Docket Entry 43; Representative Plaintiff's
Reply in Support of His Motion for Preliminary Approval of Class Action Settlement Agreement with CVS
Pharmacy, Inc. ("Aliano's Reply") at 5-6, Docket Entry 60; Transcript of Hearing Held on September 21, 2016
("Sept. 21 Tr."), Docket Entry 67; Plaintiff's Post-Hearing Submission in Support of His Motion for Preliminary
Approval of Class Action Settlement Agreement with CVS Pharmacy, Inc. ("Aliano's Post-Hearing Mem."), Docket
Entry 68; Post-Hearing Reply of Plaintiffs Jeffrey Worth and Robert Burns in Further Objection to Plaintiff Mario
Aliano's Motion for Preliminary Approval of Class Action Settlement ("*Worth*'s Post-Hearing Reply"), Docket
Entry 74; Transcript of Proceedings Held on October 23, 2017 ("Tr."), Docket Entry 94; Supplemental
Memorandum in Support of *Worth* Plaintiffs' Motion for Interim Lead Counsel, and in Further Support of Their

to plaintiff's claims, the front of the product's packaging prominently displayed the promise
"CLINICALLY SHOWN MEMORY IMPROVEMENT" and the packaging's reverse stated that
"Algal-900 DHA . . . is clinically shown to improve memory."  AC ¶¶ 26, 28.  The Federal Trade
Commission reviewed the sole study on which CVS based the assertions on the packaging, and
concluded that the study did not justify the broad memory improvement claims made for a
closely related product containing the same active ingredient.[2]  Accordingly, plaintiffs in each of
these actions allege that a nationwide class of consumers are entitled to compensation because
they purchased the product in reliance on the now-discredited memory improvement claim.  *See,
e.g.*, AC ¶¶ 72, 79-82.

On February 1, 2016, plaintiffs Jeffrey Worth and Robert Burns ("*Worth* plaintiffs") filed
their complaint in this District.  On February 11, 2016, plaintiff Mario Aliano ("Aliano") filed
his complaint in the Circuit Court of the State of Illinois for Cook County, and on March 16,
2016, CVS removed Aliano's action to the United States District Court for the Northern District
of Illinois.  Notice of Removal, Docket Entry 1.

By April of 2016, Aliano and *Worth* plaintiffs were each engaged in separate settlement
negotiations with CVS.  Tr. at 25:4-6.  Aliano and CVS reached a settlement first and moved
before the federal court in Illinois for preliminary certification.  First *Aliano* Mot. at 2.
Contending that Aliano's settlement was not the best outcome for the putative class and

---

Objection to Preliminary Approval ("Suppl. *Worth* Mem."), Docket Entry 107; Email from CVS's Counsel ("CVS Email"), Docket Entry 107-10; Deposition of Mario Aliano ("Aliano Dep."), Docket Entry 107-11; Declaration of Mario Aliano Regarding His Last Purchase of Algal-900 DHA ("Aliano Decl."); Docket Entry 107-12; Reply Memorandum in Support of *Worth* plaintiffs' Motion for Interim Lead Counsel, and In Further Support of Their Objection to Preliminary Approval ("Suppl. *Worth* Reply"), Docket Entry 109; Declaration of Matthew Simon, Esq. ("Simon Decl."), Docket Entry 109-1; Plaintiff Mario Aliano's Response to the *Worth* Plaintiffs' Supplemental Memorandum in Further Support of Their Objection to Preliminary Approval ("Aliano's Suppl. Response"), Docket Entry 115; Declaration of Thomas A. Zimmerman, Jr. in Support of Plaintiff Mario Aliano's Response to the *Worth* Plaintiffs' Supplemental Memorandum in Further Support of Their Objection to Preliminary Approval ("Zimmerman Decl."), Docket Entry 115-1.

[2] *See* I-Health, Inc., 158 F.T.C. No. C-4486 (2014), 2014 WL 4252391.

recognizing that final approval of it would preclude their efforts to negotiate a better settlement on behalf of the same class, *Worth* plaintiffs successfully moved to intervene in Aliano's action and have it transferred it to this District.  *See* Objection at 1, 6-7; *see also* Transfer Order.

Once the matter was before this Court, Aliano brought a renewed motion for preliminary approval of the settlement he had reached with CVS.  *See* Second *Aliano* Mot.  By Order dated July 7, 2016, the Honorable Frederic Block referred Aliano's motion to the Magistrate Judge then assigned to the case to review, hold a hearing if necessary, and issue a Report and Recommendation.

The case was subsequently reassigned to me.  I held a hearing on Aliano's motion for preliminary approval on October 23, 2017.  During that hearing, counsel for the *Worth* plaintiffs raised concerns about Aliano's standing and adequacy as a potential class representative and sought to conduct Aliano's deposition, which I permitted.  Tr. 29:21-24.  Aliano's deposition was then taken, after which the parties submitted additional briefing.  *See* Docket Entries 106-112, 114, 115.

For the reasons stated below, I conclude that Aliano has failed to demonstrate that he will fairly and adequately protect the interests of the class.  I therefore respectfully recommend that Aliano's motion for preliminary approval be denied.

## FACTUAL BACKGROUND

Plaintiffs in *Worth* object to Aliano's motion for preliminary approval.  In their objection, *Worth* plaintiffs contend, among other things, that Aliano and his counsel do not satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4) and (g), and

argue further that the settlement is substantively inadequate.  *See* Objection at 8, 18.[3]  Because it is the basis for the Court's recommendation, the facts set forth below are those most pertinent to the *Worth* plaintiffs' objection under Rule 23(a)(4).

The facts reveal an unusually close and long-standing working relationship between Aliano and his attorneys in this action, Zimmerman Law Offices (referred to below as "Zimmerman").  This relationship extends to numerous lawsuits other than this one. Zimmerman represents or has represented Aliano as a plaintiff in as many as thirty-six other suits.  *See* Objection at 4 n.1.[4]  The docket numbers of these actions indicate that Zimmerman and Aliano began bringing cases together at least as long ago as 2007.  *Id.*  In addition, Zimmerman recently defended Aliano in an action brought against him under the Fair Labor Standards Act.  *See* Complaint ¶ 1, *Ortega v. Due Fratelli, Inc.*, No. 14-6669 (N.D. Ill. Aug. 8, 2014).  That litigation ultimately settled, but only after Zimmerman attorneys defended a summary judgment motion and attended approximately a dozen conferences with the Court.  *See Ortega* Docket, Suppl. *Worth* Mem., Ex. L.

---

[3] Although it is not a primary focus of *Worth* plaintiffs' most recent iteration of their objection, Aliano's standing has been called into question at several points in this litigation.  *See, e.g.*, Tr. 25:15-22.  Standing is a threshold matter considered apart from the merits of a claim.  *See Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 574 (2d Cir. 2018) ("Where a plaintiff alleges a concrete, economic injury . . . the plaintiff has alleged a sufficient injury to establish Article III standing, regardless of the merits of the plaintiff's [claim].").  "[I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants."  *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 161 (2d Cir. 2014).  Aliano alleges that he purchased CVS's product in reliance on false or misleading statements that led him to believe the product would perform a function it could not, and thereby suffered an economic harm, which is precisely the same harm alleged on behalf of the remainder of the class.  *See* AC ¶¶ 35-39, 72, 79-82.  Accordingly, without determining the credibility of Aliano's allegations or adjudicating the merits of his claims, I conclude that Aliano has alleged sufficient facts to support his standing to assert the claims he brings as a class representative.

[4] Aliano contends that the number of cases he has brought with Zimmerman as his counsel is slightly fewer that *Worth* plaintiffs claim.  Aliano's Reply at 5-6.  Regardless, the number is substantial.

The amount of work that Zimmerman invested in *Ortega* is noteworthy because all of it was done for free.  Earlier in this litigation, the Court granted *Worth* plaintiffs' motion to compel disclosure of Zimmerman's retainer agreement with Aliano for representation in *Ortega*.  *See* Order dated April 3, 2018.  Zimmerman then produced the agreement, which indicates that Zimmerman's representation of Aliano in *Ortega* was undertaken pursuant to the law firm's "Associate Attorney Development Program."  This program provides that,

> [i]n exchange for allowing associate attorneys, including the most junior attorneys, to gain extensive case management, litigation and trial experience, there will be no charge for the Firm's legal services. The Firm will not submit any invoices to the Client, and the Client agrees that the Firm has the right to select the attorneys who will manage legal services on the Matter.

Zimmerman Decl. Ex. A.

Zimmerman represents that junior attorneys in the firm in fact researched the law, drafted the key filings in the case, and attended Court conferences.  *See* Aliano's Suppl. Response 2-3. However, it is clear that Mr. Zimmerman himself personally undertook a substantial amount of the legal work performed for Aliano in *Ortega*.  Mr. Zimmerman took plaintiff's deposition in that case, apparently without assistance.  *Id.* at 3; Zimmerman Decl. ¶ 9.  Likewise, Mr. Zimmerman alone defended Aliano's deposition.  *See id.*  Moreover, Zimmerman contends that the firm had no newly-admitted associates at all from November 26, 2014 until July 2, 2015. Aliano's Suppl. Response at 3.  During this time, *six* status hearings were held in *Ortega*. *Ortega* Docket, Suppl. *Worth* Mem., Ex. L, Entries 15, 17, 21, 24, 25.  Having no newly-admitted associates at the time, Mr. Zimmerman presumably personally appeared on behalf of Aliano at each of those hearings, just as he personally took the plaintiff's deposition and defended the deposition of Aliano.  Moreover, even if associates did perform substantial legal work on Aliano's behalf, Mr. Zimmerman supervised those associates and reviewed the documents they prepared.  Zimmerman Decl. ¶ 8.  Thus, regardless of the Associate Attorney

5

Development Program, it is clear that Mr. Zimmerman personally devoted substantial time to Aliano's *Ortega* defense and that associates paid by his firm did as well, yet neither he nor his firm were paid anything by Aliano at all.

Zimmerman's free representation in the *Ortega* litigation is of particular concern because the *Ortega* action was pending when Zimmerman filed this case on behalf of Aliano and against CVS, and because *Ortega* remained pending while Zimmerman was negotiating the proposed class action settlement now before this Court for review.  Zimmerman filed an answer on behalf of Aliano in *Ortega* on October 31, 2014, and a stipulation of dismissal was filed in *Ortega* on April 21, 2016.  *See Ortega* Docket, Entries 8, 63.  Zimmerman filed this action on behalf of Aliano on February 11, 2016, and filed a motion for preliminary approval of a class action settlement on May 2, 2016, indicating that the settlement discussions were no doubt underway, and were likely completed, by April 21, 2016.  Notice of Removal ¶ 1; First *Aliano* Mot.

Four other circumstances bear on the Court's recommendation.  First, Zimmerman filed Aliano's complaint in this action shortly after the complaint was filed in *Worth*, and Aliano's complaint is very similar to the *Worth* pleading.  As noted above, *Worth* was filed on February 1, 2016, and was publicized on the internet.  *See* Suppl. *Worth* Mem. at 8 nn.3-4.  Zimmerman filed Aliano's action on February 11, 2016, less than two weeks later.  *Id.* at 7.  The substance of the allegations in the complaints is virtually identical, and the two complaints cite the same body of scientific research in support of the claims they assert.  *Compare Worth* Compl. ¶¶ 20 n.1, 21 n.2, 28 n.5, 29 nn.6-7, *with* AC ¶¶ 16 n.2, 17 n.4, 18 n.5, 19 n.6, 23 n.7.[5]  *Worth* plaintiffs further contend that their complaint includes shortened web addresses for several research studies it cites, and that these same abbreviated URLs also appear in the complaint prepared by

---

[5] Each complaint cites only one source that the other does not.  *See* AC ¶ 16 n.3; *Worth* Compl. ¶ 23 n.4.

Zimmerman for Aliano.  Suppl. *Worth* Mem. at 8.  According to counsel for *Worth* plaintiffs, they generated these abbreviated web addresses themselves, and the addresses were unique. *Worth* plaintiffs contend that, because these very same unique web addresses appear in the Aliano complaint, Zimmerman—although he denies it—must have reviewed the complaint in *Worth* and borrowed from it when preparing Aliano's complaint.  Simon Decl. ¶¶ 8, 14; Suppl. *Worth* Reply 7-8.  Zimmerman has not offered any meaningful rebuttal to this allegation.

Second, Zimmerman represents that during the firm's investigation of whether Aliano could bring a claim, it consulted with Dr. Bruce Livingston, a physician with substantial experience advising attorneys on the validity of medical claims.  *See* Aliano's Post-Hearing Mem. at 1-2.  Zimmerman notes that Dr. Livingston, in addition to being a physician for over thirty-five years, also graduated from law school and passed the Illinois Bar Exam in 1989.  *Id.* at 1.  Zimmerman goes on to tout how Livingston's "education and experience as a physician, in conjunction with his legal training, gives him a unique insight and ability to assimilate medical and legal issues and render opinions to assist attorneys in their legal matters."  *Id*. at 2.  It turns out, however, that Dr. Livingston's medical license has been suspended or revoked in several states and, in 1990, Livingston was convicted of numerous counts of Medicare fraud and mail fraud.  *See Worth*'s Post-Hearing Reply at 7, Ex. A; *see also* Judgment in a Criminal Case, United States v. Livingston, No. 89-1006 (N.D. Ill. Mar. 19, 1990).  These facts were not voluntarily disclosed by Zimmerman, but were instead brought to light by *Worth* plaintiffs.

Third, at his deposition Aliano testified with apparent certainty that he purchased the product at issue in this case from a CVS store at a particular location.  Aliano Dep., at 38-40. *Worth* plaintiffs then indicated they would seek sales information from CVS about sales of the product made from that location.  Suppl. *Worth* Mem. at 13.  Before CVS even provided that

information, Aliano served a declaration indicating his deposition testimony may have been mistaken.  Aliano Decl. ¶ 4.  Shortly thereafter, CVS reported that its records revealed that, on the date Aliano made his purchase, there were no sales of the product made at the location identified by Aliano at his deposition.  CVS Email at 1.

Fourth, at a hearing held to consider Aliano's motion for preliminary approval of a class action settlement, the Court raised various questions and concerns, and CVS in response readily offered to amend the settlement agreement in ways favorable to class members.  *See, e.g.*, Tr. at 31:14-32:1 (accepting a suggested clarification to the settlement agreement's release); *id.* at 43:22-44:12; (discussing adjustments to obviate the need for claimants to certify their number of purchases under penalties of perjury); *see also* CVS's Letter dated December 14, 2017 at 1-2. These concessions, made virtually without hesitation by CVS, were apparently never sought by Zimmerman or Aliano.

### DISCUSSION

"Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)) ("[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'").  "In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately.'"  *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir. 1987) (quoting *In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir.1986)); *see also Reynolds v.*

*Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002) (collecting cases discussing a judge's role as fiduciary of the class).

A.  *Legal Standards*

Among the prerequisites set out by Rule 23(a), Aliano and *Worth* plaintiffs principally debate only the fourth: that "the representative parties will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a)(4).  Adequacy requires that the representative plaintiff has no interests antagonistic to those of the rest of the class and will vigorously pursue the claims of the class through qualified, experienced attorneys.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016); *see also In re Metlife Demutualization Litig.*, 229 F.R.D. 369, 376 (E.D.N.Y. 2005).  A party seeking class certification bears the burden of establishing by a preponderance of the evidence that he has satisfied the requirements of Rule 23, including those of Rule 23(a)(4).  *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

In contrast to the constitutionally mandated deference shown to a criminal defendant's choice of attorney, the Court's duty to absent class members in the Rule 23 class action context mandates close scrutiny of both plaintiff and class counsel.  *Compare United States v. Curcio*, 680 F.2d 881, 884 (2d Cir. 1982) (noting that "a criminal defendant has not only a constitutional right to an attorney who has no conflict of interest but also a right—of constitutional dimension although not absolute—to counsel of his own choosing, and that the latter right should not be obstructed unnecessarily" (internal citation omitted)), *with In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) ("When a court is asked to certify a class and approve its settlement in one proceeding, the Rule 23(a) requirements designed to protect absent class members demand undiluted, even heightened, attention." (internal citations

and quotation marks omitted)).  Indeed, "[t]he adequacy of the proposed class representative is widely considered the most important of the Rule 23(a) factors because it directly implicates the due process rights of absent class members who will be bound by the judgment." *Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 198 (S.D.N.Y. 2015).

As discussed above, the Court's attention in this case has been drawn to the close, long-standing relationship between proposed class representative Aliano and proposed class counsel, Mr. Zimmerman.  Such a relationship may render a proposed representative plaintiff inadequate. *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2018 WL 1229761, at *93 (S.D.N.Y. Feb. 28, 2018); *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155 (S.D.N.Y. 2010) (emphasizing that "[a] key element in the determination of whether a plaintiff's interests are antagonistic to those of other members of the class is the relationship between the class representative and class counsel").

Before disqualifying a representative plaintiff, though, courts consider factors such as the closeness of the relationship and the degree to which it has been disclosed.  *Id.*; *see also Malchman v. Davis*, 761 F.2d 893, 899 (2d Cir. 1985), *abrogated on other grounds by Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ("[T]he question whether named plaintiffs are adequate class representatives is one committed to the sound discretion of the district court."); *Gordon*, 92 F. Supp. 3d at 198–99; *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 96 (S.D.N.Y. 2010) ("Numerous courts . . . have found that a named plaintiff is an inadequate representative where there is a close personal relationship between a plaintiff and class counsel.").  Most significantly, a Court will consider whether the value a class member may recover is eclipsed by the benefit that plaintiff expects from an ongoing relationship with class counsel.  *See In re LIBOR*, 2018 WL 1229761 at *93; *see also Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 95 (7th

Cir. 1977) ("Even though plaintiff does not expect to share in any attorney's fees recovered in this cause, there exists the possibility that one so situated will become more interested in maximizing the 'return' to his counsel than in aggressively presenting the proposed class' action."); *Shields v. Washington Bancorporation*, 1991 WL 221940, at *2 (D.D.C. Oct. 10, 1991) ("[T]he possibility that plaintiff may benefit when his attorneys benefit—either directly by receiving future business . . . or indirectly by helping a business associate at the expense of the class—casts doubt on whether plaintiff will fairly and adequately protect the interests of the entire class.").

An actual conflict is not a prerequisite to a finding of inadequacy; even "a 'potential conflict of interest' is sufficient to render a named plaintiff an inadequate class representative.'" *In re LIBOR*, 2018 WL 1229761, at *93 (quoting *Hale v. Citibank, N.A.*, 198 F.R.D 606, 607 (S.D.N.Y. 2001)); *see also In re Discovery Zone Sec. Litig.*, 169 F.R.D. 104, 109 (N.D. Ill. 1996) (finding plaintiffs inadequate where their relationship with "class counsel is inherently riddled with the appearance of and potential for impropriety," and noting that "[t]he appearance of impropriety is the primary factor mandating judicial inquiry" (internal citations and quotation marks omitted)). Accordingly, a Court may find a representative plaintiff inadequate without deciding that an actual conflict exists, because "the possibility of inadequacy and the appearance of impropriety are sufficient." *In re IMAX Sec. Litig.*, 272 F.R.D. at 157.

B. *Analysis*

The facts presented in this case preclude a finding that Aliano would fairly and adequately protect the interests of the class. As noted above, Zimmerman has represented Aliano as a plaintiff in numerous actions over a period of nearly a decade. The sheer number of lawsuits brought with Zimmerman as counsel and Aliano as lead plaintiff creates the appearance that

Aliano is likely interested in bringing additional actions with Zimmerman as his counsel in the future.  Zimmerman has also invested significant time and resources defending a lawsuit brought against Aliano, and did so without charge.  That lawsuit was pending against Aliano at the time the complaint in this action was filed, and remained pending while Zimmerman was negotiating with CVS over the proposed class action settlement now before the Court for review.

The class action settlement proposed by Aliano contemplates small payments to absent class members, but an award of attorney's fees of as much as $100,000.  First *Aliano* Mot. at 5-7. Given his relationship with Zimmerman, and in particular given that Zimmerman was defending him without charge in *Ortega* at the very same time that settlement negotiations with CVS were underway, Aliano may well have felt some pressure to accept the proposed settlement because of the benefit that would accrue to Zimmerman.  Under these circumstances, an absent class member could reasonably conclude that Aliano's incentives as representative were, and will be, influenced by his relationship with Zimmerman.

Even assuming that Aliano's decision to accept the settlement was not influenced by his relationship with Zimmerman, the circumstances of that relationship create an appearance of impropriety.  That appearance of impropriety is bolstered by the failure of Aliano or Zimmerman to disclose the extent of their relationship.  Plaintiffs in *Worth* first alerted the Court to the numerous cases brought by Aliano as plaintiff and Zimmerman as counsel.  And only when *Worth* plaintiffs took Aliano's deposition and moved to compel documents from Zimmerman— discovery that Aliano and Zimmerman resisted—did *Worth* plaintiffs learn of, and inform the Court about, Zimmerman's free representation of Aliano as a defendant in a lawsuit pending at the same time as this one.

Other aspects of Aliano's motion for approval of a class settlement raise further red flags and cause the Court to question whether Aliano's decision to select Zimmerman as class counsel was unduly influenced by the close relationship between them.  First, as discussed above, Aliano's complaint was filed less than two weeks after the initial pleading in *Worth*, makes essentially the same allegations, and seeks substantially the same relief on behalf of the same class.  Moreover, there is persuasive circumstantial evidence that Zimmerman drew from the *Worth* complaint when preparing Aliano's complaint in this case and copied aspects of it.  Less than three months after filing his lawsuit, and while plaintiffs in *Worth* were in the midst of mediator-assisted negotiations with CVS, Aliano brought the pending motion for preliminary approval of a class action settlement.  It therefore appears that Zimmerman and Aliano crafted a "copycat" complaint and rushed to reach a settlement before *Worth* plaintiffs could conclude their negotiations.[6]  The primary beneficiaries of such a strategy, of course, would be Zimmerman and Aliano and not the members of the putative class.

The Court's confidence in Aliano's adequacy is shaken further by his decision to rely upon Dr. Livingston as an expert witness.  As noted above, Dr. Livingston has been convicted of mail and Medicare fraud, and his credibility is as a result highly questionable and manifestly vulnerable to stinging impeachment.  Again, these compromising facts were not disclosed by Zimmerman and Aliano, but were instead brought to the attention of the Court by plaintiffs in *Worth*.

Aliano's own credibility has been called into question as well.  As noted above, Aliano testified at his deposition that he purchased the product at a particular CVS store.  After *Worth* plaintiffs announced that they would seek CVS's sales information from that store—albeit before

---

[6] Zimmerman's only response to this conclusion is a statement made in an earlier hearing in this case, in which the Honorable Marilyn D. Go, commenting on Aliano's complaint, noted that "I don't find it to be a copycat complaint."  Sept. 21 Tr. at 37:14-15.  Judge Go's comment was made, however, without the benefit of *Worth* plaintiffs' evidence of duplicated URLs, which was only presented to the Court much later.

*Worth* plaintiffs received CVS's response—Aliano served a declaration indicating his deposition testimony may have been mistaken.  CVS later reported that, in fact, there were no sales of the product at the location Aliano first testified to visiting on the date of his purported purchase.

Finally, the manner in which CVS responded to various concerns expressed at the hearing on plaintiff's motion for preliminary approval further suggests that Aliano may not be an adequate representative and that his choice of Zimmerman as counsel may not be in the best interests of the class.  At and after that hearing, defendant CVS quickly offered several clarifications to the settlement agreement for the benefit of the class and agreed to modified, simpler procedures for submitting claims.  Defendant's ready willingness to amend the agreement in response to *Worth* plaintiffs' and the Court's questions suggests that Zimmerman may not have advocated as zealously as he might have when rushing to negotiate an agreement with CVS before the *Worth* plaintiffs did so.

Aliano cites several cases in which courts have found a plaintiff to be an adequate class representative despite past professional dealings, and even some anticipation of future work, with proposed class counsel.  *See Hughes v. The Ester C Co.*, 317 F.R.D. 333, 347–48 (E.D.N.Y. 2016), *reconsideration denied sub nom. Hughes v. Ester C. Co.*, 320 F.R.D. 337 (E.D.N.Y. 2017) (finding two plaintiffs adequate despite one being a longtime friend of one of the attorneys purportedly serving as class counsel and the other having previously served as co-counsel in a different action, because defendants offered no evidence of antagonistic interests); *Sobel v. Hertz Corp.*, 291 F.R.D. 525, 542-43 (D. Nev. 2013), *aff'd in part, vacated in part,* 674 F. App'x 663 (9th Cir. 2017) (finding plaintiffs adequate despite business relationships with class counsel, noting that the requirement of adequate representation is satisfied as long as one of two or more representatives is adequate, and where at least one plaintiff's business dealings were "long ago

14

and modest"); *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 52 (D. Conn. 2000) ("The Court will not decline class certification simply because the plaintiff and his counsel have had professional dealings in the past, without any other evidence suggesting some improper purpose for the suit.").

These and similar cases are not persuasive authority in this case.  Certain facts and circumstances presented here are absent from these cases.  For example, *Worth* plaintiffs have presented specific evidence here that Aliano has not only served as a named plaintiff represented by Zimmerman in a large number of lawsuits, but also that, when Aliano was sued, Zimmerman defended him without charge.  Moreover, the extent of the relationship between Aliano and Zimmerman was first disclosed long after Aliano brought his motion for preliminary approval, and even then only when *Worth* plaintiffs pressed for discovery that Aliano resisted.  Finally, as discussed above, the relationship between Aliano and Zimmerman is not the only reason adequacy is not met in this case; the circumstances under which Aliano came to bring this lawsuit, his decision to retain Dr. Livingston as a medical expert, questions about his own credibility, and the failure to seek concessions from CVS that it readily provided when asked also cut against finding Aliano to be an adequate representative of the class.

### CONCLUSION

For the foregoing reasons, I respectfully recommend that Aliano's motion for preliminary approval be denied.  In making this recommendation, I am mindful that denying the motion may delay any recovery by the class.  *Worth* plaintiffs, though, have demonstrated their willingness to pursue the claims of the class.  Plaintiffs and absent class members will, therefore, not be left without an advocate and representative.

Any objections to the recommendations made in this Report must be made within fourteen days after filing this Report and Recommendation and, in any event, on or before June 4, 2018. Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).

_____/s/_____

STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
May 21, 2018

*U:\#DJM 2017-2018\Worth et al. v. CVS Pharmacy, Inc 16-cv-498 (FB) Aliano v. CVS Pharmacy, Inc. 16-cv-2624 (FB)\R&R FINAL.docx*